# EXHIBIT 5

Nuevo

CO 1840694
CG 1480

   

# *PROYECTO HAMACA*

## CONVENIO DE ASOCIACION

**Entre las compañías Corpoven, Atlantic Richfield, Phillips y Texaco para la explotación y mejoramiento de crudo extrapesado a ser producido en los bloques H y M del área Hamaca de la Faja del Orinoco.**



1

17.5 <u>Consolidación; Acumulación.</u> Si alguna Parte o cualquier parte de algún Convenio Relacionado o cualquier otra Persona que esté vinculada a éste u otro convenio de arbitraje similar, en relación con el Proyecto o las actividades ejecutadas en el Area de Proyecto, inicia múltiples procedimientos de arbitraje, las materias objeto o que estén relacionadas con asuntos comunes de ley o hechos y de las que puedan resultar laudos u obligaciones contradictorios, las Partes convienen que tales procedimientos se podrán acumular o consolidar dentro de un procedimiento arbitral único por solicitud de cualquier Parte. Sin perjuicio de lo anterior, las Partes también convienen que cualquier garante de las obligaciones de una Parte conforme a este Convenio o cualquier Convenio Relacionado, se podrá acumular o consolidar en cualquier arbitraje que se efectúe conforme a este Convenio. Las Partes convienen que cualquier parte de un Convenio Relacionado podrá ser obligada a hacerse parte en cualquier procedimiento de arbitraje. Si cualquier parte en un Convenio Relacionado se hace parte en algún arbitraje conforme a lo aquí previsto, cualquier estipulación de tal Convenio Relacionado en relación con la revelación de información será aplicable. No obstante lo establecido en la Sección 17.2(a), para el caso que en cualquier procedimiento arbitral en el cual Corpoven y la Filial de Corpoven sean partes y los intereses y posiciones de Corpoven y la Filial de Corpoven no sean los mismos, la ICA designará todos los árbitros en el procedimiento arbitral.

17.6 <u>Costos.</u> Los costos del procedimiento de arbitraje (distintos de los costos relacionados con traducciones), incluyendo honorarios de abogados y costas, serán asumidos de la manera que determine el tribunal arbitral.

17.7 <u>Renuncia a la Inmunidad.</u> Las Partes declaran que las actividades contempladas en este Convenio y en los Convenios Relacionados son de naturaleza comercial. En la medida en que cualquier Parte tenga o pueda llegar a adquirir subsecuentemente cualquier inmunidad a la jurisdicción de cualquier tribunal, o contra cualquier medida cautelar de ejecución o cualquier otro proceso legal (distinto a una medida preventiva) en cualquier acción o procedimiento que de cualquier manera surja de este Convenio o cualquier Convenio Relacionado en relación a sí misma o a sus activos, dicha Parte, por medio del presente, conviene irrevocablemente no invocar dicha inmunidad como una defensa y renuncia irrevocablemente a dicha inmunidad.

17.8 <u>Resolución Alternativa a la Disputa.</u> En el caso que cualquier arbitraje o laudo otorgado de conformidad con un laudo arbitraje efectuado de acuerdo a las disposiciones de este Artículo XVII, sea declarado inválido o inejecutable en Venezuela por cualquier razón, las Partes, a la elección de cualquier de ellas, convienen en someter dicha disputa, que surja o esté relacionada de cualquier manera a este Convenio a arbitraje vinculante ante el Centro Internacional para la Resolución de Disputas por Inversión (*International Center for Settlement of Investment Disputes*, en adelante "<u>ICSID</u>"), de conformidad con sus normas de arbitraje vigentes para el momento de dicha disputa. Las Partes acuerdan que a los fines de un arbitraje en la ICSID, las actividades contempladas en este Convenio, constituirán una inversión. En el caso que ICSID no esté dispuesto o sea incapaz de conocer una disputa por cualquier razón, las Partes seleccionarán un foro de arbitraje alterno para determinar la disputa. Sujetas a los requerimientos de este foro, todas las otras disposiciones de este

sixty (60) days, after his appointment, taking into account the circumstances requiring an expeditious resolution of the matter in dispute; provided, that no failure to make a decision within such period shall invalidate the expert's determination. Upon the request of any Party, the expert shall hold an expedited, one-day hearing with each Party having equal time to be heard. All communications between the Parties and the expert shall be conducted in writing with copies sent simultaneously and by the same means to all Parties. If any meetings take place with the expert, such as during an inspection of facilities or the explanation of any documents or records, then all Parties shall receive reasonable advance notice and be entitled to attend.

(d)     The costs and expenses of the expert shall be borne by the Parties in proportion to their interests in the Project.

17.4    Pre-Judgment Attachment. Except as otherwise specified in Article XI, each Party agrees that it shall not, and waives any right it might have to, seek to attach assets of any other Party prior to issuance of a final arbitral decision pursuant to this Article XVII.

17.5    Consolidation; Joinder. If any Party or any party to any Related Agreement or any other Person who is bound to this or another similar arbitration agreement in connection with the Project or activities conducted in the Project Area initiates multiple arbitration proceedings, the subject matters of which are related by common questions of law or fact and which could result in conflicting awards or obligations, the Parties hereby agree that all such proceedings may be consolidated into a single arbitral proceeding at the request of any Party. Without prejudice to the above, the Parties also agree that any guarantor of a Party's obligations under this Agreement or any Related Agreement may be joined or consolidated into any arbitration that results under this Agreement. The Parties agree that any party to a Related Agreement may be joined as a party in any arbitration proceeding. If any party to a Related Agreement is joined in an arbitration hereunder, any provisions of such Related Agreement regarding the disclosure of information shall apply. Notwithstanding the provisions of Section 17.2(a), in the event that in any arbitration proceeding to which Corpoven Sub and Corpoven are both parties, the interests and positions of Corpoven Sub and Corpoven are not the same, the ICA shall appoint all arbitrators in the arbitration proceeding.

17.6    Costs. The costs of the arbitration proceedings (other than costs of arrangements for translations), including attorneys' fees and costs, shall be borne in the manner determined by the arbitral tribunal.

17.7    Waiver of Immunity. The Parties agree that the activities contemplated by this Agreement and the Related Agreements are commercial in nature. To the extent that any Party has or hereafter may acquire any immunity from jurisdiction of any court, or from attachment in aid of execution or any other legal process (other than pre-judgment attachment) in any action or proceeding in any manner arising out of this Agreement or any Related Agreement with respect to itself or its assets, such Party hereby irrevocably agrees not to invoke such immunity as a defense and irrevocably waives such immunity.

78

3


TRANSPERFECT

**TRANSLATION CERTIFICATE OF ACCURACY**

City of New York, State of New York, County of New York

I, Aurora Landman, hereby certify the following:

I am a project manager employed by TransPerfect Legal Solutions, a professional translation company with ISO 17100 certification. TransPerfect Legal Solutions is qualified to render accurate translations into English of Spanish language documents.

This certification relates to The Hamaca Association Agreement (dated July 9, 1997), which has been provided to me in both its original Spanish-language version and with an accompanying English-language translation.

Sections 17.2 and 17.7 from the English-language translation of the foregoing agreement are, to the best of my knowledge and belief, true and accurate translations of the corresponding sections from the Spanish-language version of the same agreement.

_____
Aurora Landman

Sworn to before me this
April 26, 2018

_____
Signature, Notary Public



_____
Stamp, Notary Public

LANGUAGE AND TECHNOLOGY SOLUTIONS FOR GLOBAL BUSINESS

THREE PARK AVENUE, 39TH FLOOR, NEW YORK, NY 10016 I T 212.689.5555 I F 212.689.1059 I WWW.TRANSPERFECT.COM
OFFICES IN 90 CITIES WORLDWIDE

4

cc: 1480

# FIANZA DE PDVSA

correspondiente, de todos los pagos que a las Partes les pueda corresponder hacer conjuntamente de acuerdo al Convenio o a cualquier Convenio Relacionado, (iv) el cumplimiento, y el pago de los daños resultantes del incumplimiento, por parte de la Filial de Corpoven, de su cuotaparte de cualesquiera obligaciones conjuntas de las Partes de acuerdo con el Convenio o cualquier Convenio Relacionado, y (v) el pago de la cuotaparte de la Filial de Corpoven, según se determine conforme al Convenio o al Convenio Relacionado correspondiente, de cualesquiera daños resultantes del incumplimiento por las Partes de obligaciones conjuntas de las Partes de acuerdo con el Convenio o cualquier Convenio Relacionado. Nada en esta Fianza será interpretado como una limitación a la potestad de ninguna Parte Extranjera, ni una exigencia a ninguna Parte Extranjera, de requerir al Fiador el cumplimiento específico de cualesquiera obligaciones de la Filial de Corpoven conforme al Convenio o cualquier Convenio Relacionado en los casos donde un cumplimiento específico sea procedente de acuerdo con la ley aplicable.

8.  Todas las obligaciones del Fiador previstas en esta Fianza obligarán al Fiador y a sus sucesores. El Fiador no cederá o delegará sus obligaciones o deberes derivados de esta Fianza sin el consentimiento previo y por escrito de cada una de las Partes Extranjeras, consentimiento éste que cada una de ellas se podrá abstener de otorgar a su sola discreción, y cualquier cesión o delegación que se intente hacer sin dicho consentimiento será nula y sin efecto alguno. El Fiador declara que esta Fianza se mantendrá en plena vigencia en relación con cualquier cesionario autorizado de las obligaciones de la Filial de Corpoven de acuerdo con el Convenio o cualquier Convenio Relacionado, en el entendido que tal cesionario sea una Filial de la Filial de Corpoven. Una vez realizada dicha cesión, el cesionario será considerado la Filial de Corpoven para todos los fines previstos en esta Fianza en la medida de las obligaciones cedidas. El Fiador adicionalmente declara que cualquier cesionario autorizado de cualquier Parte Extranjera conforme al Convenio o cualquier Convenio Relacionado podrá ejercer todos los derechos, acciones y recursos de dicha Parte Extranjera de acuerdo con esta Fianza. Ninguna otra Persona será un beneficiario de esta Fianza o tendrá o adquirirá algún derecho en razón de ella, bajo ninguna circunstancia. El Fiador conviene en que no transferirá o cederá, ni permitirá a sus Filiales transferir o ceder, sin el previo consentimiento de cada una de las Partes Extranjeras, el cual cada una de ellas podrá abstenerse de dar a su sola discreción, cualquier participación directa o indirecta que pudiere tener en la Filial de Corpoven, si, como resultado de dicha transferencia o cesión, cualquier obligación del Fiador (o derecho de las Partes Extranjeras) conforme a esta Fianza, se restringiría o terminaría.

9.  De acuerdo con los requisitos del Acuerdo de fecha 24 de abril de 1997, publicado en la Gaceta Oficial de la República de Venezuela, No. 36.209, de fecha 20 de mayo de 1997 esta es una fianza que garantiza actividades comerciales (a ser llevadas a cabo por las Partes en su condición de participantes en la Asociación celebrada conforme al Convenio), y, como tal, esta Fianza de ninguna forma puede considerarse como una fianza de la República de Venezuela. En la medida en que

6

el Fiador tenga, o subsecuentemente, pueda llegar a adquirir cualquier inmunidad a la jurisdicción de cualquier tribunal, o contra cualquier medida cautelar de ejecución o cualquier otro proceso legal (distinto a una medida preventiva) en cualquier acción o procedimiento que de cualquier manera surja de esta Fianza en relación al Fiador o a sus activos, dicho Fiador por medio de la presente, conviene irrevocablemente, en no invocar dicha inmunidad como una defensa y renuncia irrevocablemente a dicha inmunidad.

10. Esta Fianza se regirá e interpretará de acuerdo con las leyes de la República de Venezuela.

11. Cualquier omisión o retardo de cualquier Parte Extranjera en ejercer cualquier derecho, en todo o en parte, de los previstos en esta Fianza, no se interpretará como una renuncia al ejercicio del mismo ni de cualquier otro derecho.

12. Ninguna enmienda o modificación a esta Fianza será efectiva a menos que conste por escrito y sea firmada por el Fiador y cada una de las Partes Extranjeras.

13. Cualquier disputa que surja de, o se relacione de cualquier manera con, esta Fianza o su ejecución, será resuelta exclusiva y definitivamente mediante arbitraje. El arbitraje estará regido y será resuelto en forma definitiva de conformidad con las Normas de Conciliación y Arbitraje de la Corte Internacional de Arbitraje (en adelante "ICA" ) de la Cámara Internacional de Comercio (en adelante las "Normas ICC"). El Fiador designará a un (1) árbitro y la Parte Extranjera (o si hay más de una Parte Extranjera en la disputa, colectivamente las Partes Extranjeras) designará a un (1) árbitro, y si el Fiador o la Parte Extranjera (o las Partes Extranjeras colectivamente) no lo designan dentro de los treinta (30) días siguientes al recibo de la notificación del comienzo del arbitraje, la ICA designará un árbitro en representación de tal parte. Los dos (2) árbitros así designados, bien por las partes o en representación de cada parte, designarán el tercer árbitro, quien presidirá, dentro de los treinta (30) días siguientes después que el último de los dos árbitros haya sido designado por, o en representación del Fiador y de la Parte Extranjera (o colectivamente las Partes Extranjeras). Si los dos (2) árbitros así designados no pudieren acordar dentro de los treinta (30) días siguientes después de que el último de los dos árbitros haya sido designado por, o en representación del Fiador o de la Parte Extranjera (o colectivamente las Partes Extranjeras) sobre quien será el tercer árbitro quién presidirá, y dicho lapso no es prorrogado, entonces el árbitro quién presidirá será designado por la ICA tan rápidamente como fuere posible.

Ningún árbitro tendrá ningún interés financiero, directo o indirecto, en la disputa, ni dependerá financieramente, en forma alguna directa o indirectamente, de cualquier parte de la disputa. Todos los árbitros serán imparciales y deberán obedecer las Reglas de Etica para Arbitros Internacionales del *International Bar Association*. El árbitro quien presida no será de la misma nacionalidad que

7

(iv) compliance with and payment of damages resulting from failure by the Corpoven Affiliate to pay its share of any joint obligations of the Parties under the terms of the Agreement or any Related Agreement, and (v) payment of the Corpoven Affiliate's share, as specified by the Agreement or the corresponding Related Agreement, of any damages resulting from failure by the Parties to comply with the joint obligations of the Parties under the terms of the Agreement or any Related Agreement.  None of the provisions of this Guarantee will be interpreted in such a way as to restrict the authority of any Foreign Party or to limit any Foreign Party's right to require that the Guarantor be subject to specific performance of any of the obligations of the Corpoven Affiliate under the terms of the Agreement or any Related Agreement in situations where specific performance is allowed under the terms of applicable law.

8.   All obligations of the Guarantor described in this Guarantee will be binding upon the Guarantor and its successors.  The Guarantor will not assign or delegate its obligations or duties under the terms of this Guarantee without the prior, written consent of each of the Foreign Parties, and any of the Foreign Parties may deny its consent at its sole discretion, and any assignment or delegation without the consent of the Foreign Parties will be null, void and invalid.  The Guarantor declares that this Guarantee will remain in full force and effect with respect to any authorized assignee of the obligations of the Corpoven Affiliate under the terms of the Agreement or any Related Agreement, if and when the assignee is an Affiliate of the Corpoven Affiliate.  Once the assignment is formalized, the assignee will be considered to be the Corpoven Affiliate for all intents and purposes as set forth in this Guarantee with respect to the assigned obligations. The Guarantor furthermore declares that any authorized assignee of any Foreign Party under the terms of the Agreement or any Related Agreement may exercise all rights, actions and recourses to which the Foreign Party is entitled under the terms of this Guarantee.  No other Person will be a beneficiary of this Guarantee or will hold or acquire any right related to the Guarantee under any circumstance. The Guarantor agrees that it will not transfer or assign, nor will it allow its Affiliates to transfer or assign any obligations under the terms of this Guarantee without the prior consent of each of the Foreign Parties, and any of the Foreign Parties may refuse, at its sole discretion, to give any direct or indirect participation which the Party could have in the Corpoven Affiliate if, as a result of the transfer or assignment, any obligation of the Guarantor (or the right of the Foreign Parties) under the terms of this Guarantee, would be restricted or terminated.

9.   Pursuant to the requirements of the Resolution dated April 24, 1997, published in the Official Gazette of the Republic of Venezuela No. 36.209 on May 20, 1997, this guarantee corresponds to commercial activities (conducted by the Parties in their capacity as participants in the Association formed under the terms of the Agreement) and that, as such, this Guarantee may in no way be considered to be a guarantee offered by the Republic of Venezuela.  To the extent that the Guarantor

6

has or subsequently may come to acquire any immunity to the jurisdiction of any court, or against any interim relief measure or any other legal process (other than interim relief) in any action or process in any way related to this Guarantee with respect to the Guarantor or its assets, the Guarantor hereby irrevocably agrees not to invoke immunity as a defense and irrevocably waives the immunity in question.

10. This Guarantee will be governed and interpreted in accordance with the laws of the Republic of Venezuela.

11. Any omission or delay by any Foreign Party in fully or partially exercising any right described in this Guarantee, will not be interpreted as a waiver of the right to exercise the right in question or any other right.

12. No amendment or modification of this Guarantee will be binding unless it is in writing and signed by the Guarantor and each of the Foreign Parties.

13. Any disputes resulting from or related to this Guarantee or its performance will be resolved exclusively by arbitration and any arbitration ruling will be binding. The arbitration will be governed and conducted in accordance with the Mediation and Arbitration Rules of the International Arbitration Court (hereinafter referred to as the "ICA") of the International Chamber of Commerce (hereinafter referred to as the "ICC Rules"). The Guarantor will appoint one (1) arbitrator and the Foreign Parties (or if more than one Foreign Party is involved in the dispute, collectively, the Foreign Parties) will appoint one (1) arbitrator, and if the Guarantor or the Foreign Party (or the Foreign Parties collectively) fail to appoint their arbitrators within a period of thirty (30) days following receipt of the notice of the initiation of the arbitration process, the ICA will appoint an arbitrator to represent the party in question. The two (2) arbitrators thus appointed, either by the parties or in representation of the parties, will appoint the third arbitrator, who will preside over the arbitration court, with a period of thirty (30) days following the date on which the last of the two arbitrators is appointed by or in representation of the Guarantor and the Foreign Party (or the Foreign Parties collectively). If the two (2) arbitrators thus appointed are unable to reach an agreement regarding the appointment of the third arbitrator to preside over the arbitration court within a period of thirty (30) days following the date on which the last of the two arbitrators is appointed by or in representation of the Guarantor or the Foreign Party (or the Foreign Parties collectively), and if the deadline is not extended, then the arbitrator who will preside of the arbitration court will be appointed by the ICA as soon as possible.

No arbitrator may have any direct or indirect financial interest in the dispute, nor may any arbitrator be a direct or indirect financial dependent of any of the parties to the dispute. All arbitrators will be impartial and will be subject to the Rules of Ethics for International Arbitrators issued by the International Bar Association.

7


TRANSPERFECT

**TRANSLATION CERTIFICATE OF ACCURACY**

City of New York, State of New York, County of New York

I, Aurora Landman, hereby certify the following:

I am a project manager employed by TransPerfect Legal Solutions, a professional translation company with ISO 17100 certification. TransPerfect Legal Solutions is qualified to render accurate translations into English of Spanish language documents.

This certification relates to The Hamaca Guarantee (dated July 9, 1997), which has been provided to me in both its original Spanish-language version and with an accompanying English-language translation.

Sections 9, 10 and 13 from the English-language translation of the foregoing guarantee are, to the best of my knowledge and belief, true and accurate translations of the corresponding sections from the Spanish-language version of the same guarantee.

_____
Aurora Landman

Sworn to before me this
April 26, 2018

_____
Signature, Notary Public

WENDY POON
NOTARY
NO. 01PO6356754
QUALIFIED IN
QUEENS COUNTY
COMM. EXP.
04-03-2021
PUBLIC
STATE OF NEW YORK

_____
Stamp, Notary Public

LANGUAGE AND TECHNOLOGY SOLUTIONS FOR GLOBAL BUSINESS

THREE PARK AVENUE, 39TH FLOOR, NEW YORK, NY 10016 I T 212.689.5555 I F 212.689.1059 I WWW.TRANSPERFECT.COM
OFFICES IN 90 CITIES WORLDWIDE

## ANEXO "P"
## CONTRATO DE GARANTIA E INDEMNIZACION
(PDVSA)

Este contrato de garantía (en lo adelante referido como la "Garantía") se suscribe el 10 de noviembre de 1995, entre **CONOCO ORINOCO INC.**, una compañía constituida de conformidad con las leyes del Estado de Delaware, Estados Unidos de América, representada en este acto por su apoderado, señor Constandino S. Nicandros, debidamente autorizado de conformidad con una resolución del Directorio de fecha 5 de Octubre de 1995 (en lo adelante referida como "CONOCO") y **PETROLEOS DE VENEZUELA S.A.,** compañía constituida de conformidad con las leyes de la República de Venezuela, representada en este acto por el señor Claus Graf, en su carácter de Vice-Presidente, debidamente autorizado por el Directorio, mediante acta número 95-49 del 7 de Noviembre de 1995 (en lo adelante referida como "PDVSA").

### CONSIDERANDOS

**CONSIDERANDO,** que de conformidad con la autorización otorgada por el Congreso de la República de Venezuela, publicada en la Gaceta Oficial N° 35.293 de fecha 9 de Diciembre de 1993 (en lo adelante referida como las "Condiciones"), CONOCO y MARAVEN S.A., una compañía constituida de conformidad con las leyes de la República de Venezuela, la cual es propiedad en su totalidad de PDVSA (en lo adelante referida como "MARAVEN"), simultáneamente a la firma de este documento, suscribirán un acuerdo de asociación (en lo adelante referido como el "Convenio de Asociación"), bajo cuyos términos MARAVEN y CONOCO constituirán en Venezuela una asociación comercial con forma de sociedad anónima a ser denominada PETROLERA ZUATA, PETROZUATA, C.A. (en lo adelante referida como "PETROZUATA"), con el propósito de producir comercialmente crudo extra pesado en un área de la región de Zuata en la Faja del Orinoco a ser especificada por el Ministerio de Energía y Minas de la República de Venezuela, así como también para transportar, mejorar dicho crudo extra pesado y comercializar el crudo mejorado a través de acuerdos de suministro con Conoco Inc. o con terceros (todas las anteriores actividades en lo adelante referidas como el "Proyecto"); y



11

4

disponible, ya sea contractual, administrativo o judicial, o a solicitar de CONOCO que mitigue los daños y pérdidas sufridos en cualquier medida, como condición precedente para cumplir con sus obligaciones de conformidad con el presente documento.

**ARTICULO 4. LEY APLICABLE Y ARBITRAJE:** Esta Garantía se regirá en todas sus partes por las Leyes de la República de Venezuela y por los principios de derecho internacional generalmente aceptados siempre que dichos principios no contradigan las Leyes de la República de Venezuela.

Cualquier disputa que se origine en relación con esta Garantía, o su incumplimiento, terminación, interpretación, ejecutoriedad o validez, será finalmente resuelta por arbitraje con carácter vinculante en la ciudad de Nueva York, Estado de Nueva York, Estados Unidos de América, de acuerdo a las Reglas de Conciliación y Arbitraje de la Cámara de Comercio Internacional de París, por tres (3) árbitros designados de conformidad a dichas Reglas. Este acuerdo de someterse a arbitraje, así como cualquier decisión arbitral, será ejecutado en cualquier Corte que tenga jurisdicción competente.

De conformidad con lo establecido en la autorización otorgada por el Congreso de la República de Venezuela, el objeto de esta Garantía se refiere a actividades comerciales (a ser cumplidas por una empresa mercantil a ser constituida en virtud de la Asociación Estratégica entre CONOCO y la filial de PDVSA, MARAVEN), lo cual de ninguna manera compromete la responsabilidad de la República de Venezuela ni otorga a CONOCO recurso alguno contra aquella.  En virtud de dicho principio, PDVSA acuerda que solo hará uso de aquellos mecanismos y defensas que tenga a su alcance en su carácter de empresa comercial propiedad de la República de Venezuela, de conformidad con la legislación aplicable, y no aquellos que le correspondan a la República de Venezuela (o a su Poder Ejecutivo) como Estado Soberano.

**ARTICULO 5. ACUERDO UNICO:**  Este documento constituye la única garantía otorgada por PDVSA a CONOCO con relación al Convenio de Asociación y reemplaza y sustituye cualquier garantía oral o escrita que pueda haber sido hecha por o en

12

AA and the Agreements and PDVSA shall have the right to plead any defenses that may be available to MARAVEN including, without limitation, AA Section 4.01(d)(iii).

   **Indemnification.**   PDVSA shall release, hold harmless, indemnify and defend CONOCO from any and all liabilities, damages, costs and expenses (including court or other costs and reasonable legal fees) resulting from any claim, action, suit, arbitration, or regulatory or administrative proceeding, in connection with any environmental damage or condition arising (even if such damage or condition continues to exist or is discovered after the Effective Date of the AA) prior to the Effective Date of the AA, if, and to the extent, caused by PDVSA or any Affiliate of PDVSA. Unless otherwise specifically stated herein, PDVSA agrees to honor the terms and conditions of the foregoing Guaranty and Indemnification upon demand, without setoff or counterclaim,  and hereby waives any requirement that CONOCO exhaust any available contractual, administrative or judicial remedies, or that CONOCO mitigate its damages or loses to any extent, as a condition precedent to honoring its obligations hereunder.

   **Section  4. Governing Law and Arbitration.** This Guaranty shall be governed by the laws of Venezuela and by generally accepted principles of international law to the extent that such principles do not contradict such laws.

4

venezuel\gnty9PDV.wp final

13

All disputes arising in connection with this Guaranty, or the breach, termination, interpretation, enforceability or validity thereof, shall be finally settled by binding arbitration in New York, New York, USA, under the Rules of Conciliation and Arbitration of the International Chamber of Commerce by three (3) arbitrators appointed in accordance with said Rules.  This agreement to arbitrate and any resulting award shall be enforceable in any court with competent jurisdiction.

In accordance with the requirement of the Venezuelan Congress in its approval of the AA, this is a Guaranty in support of commercial activities (to be performed by a mercantile enterprise created pursuant to a Strategic Association between CONOCO and PDVSA'S affiliate MARAVEN) which in no way grants to CONOCO recourse to the full faith and credit of the Republic of Venezuela. Consistent with this principle, PDVSA agrees that it shall only raise or claim or cause to be pleaded defenses available to it as a government owned commercial entity under the applicable law as opposed to those as may be available to the Republic of Venezuela (and its government)as a sovereign state.

Section 5. **Entire Agreement**.  This Guaranty shall

5

venezuel\gnty9PDV.wp final



**TRANSLATION CERTIFICATE OF ACCURACY**

City of New York, State of New York, County of New York

I, Aurora Landman, hereby certify the following:

I am a project manager employed by TransPerfect Legal Solutions, a professional translation company with ISO 17100 certification. TransPerfect Legal Solutions is qualified to render accurate translations into English of Spanish language documents.

This certification relates to The Petrozuata Guaranty (dated November 10, 1995), which has been provided to me in both its original Spanish-language version and with an accompanying English-language translation.

Section 4 from the English-language translation of the foregoing guaranty is, to the best of my knowledge and belief, a true and accurate translation of the corresponding section from the Spanish-language version of the same guaranty.

Aurora Landman

Sworn to before me this
April 26, 2018

Signature, Notary Public



Stamp, Notary Public

LANGUAGE AND TECHNOLOGY SOLUTIONS FOR GLOBAL BUSINESS

THREE PARK AVENUE, 39TH FLOOR, NEW YORK, NY 10016 I T 212.689.5555 I F 212.689.1059 I WWW.TRANSPERFECT.COM
OFFICES IN 90 CITIES WORLDWIDE

15