# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| PHILLIPS PETROLEUM COMPANY VENEZUELA LIMITED and CONOCOPHILLIPS PETROZUATA B.V., | : | |
| | : | |
| *Plaintiffs*, | : | |
| | : | |
| v. | : | C.A. No. 19-mc-00342-LPS |
| | : | |
| PETRÓLEOS DE VENEZUELA, S.A., CORPOGUANIPA, S.A., and PDVSA PETRÓLEO, S.A., | : | |
| | : | |
| *Defendants*. | : | |
| | : | |

## MEMORANDUM OF LAW OF PETRÓLEOS DE VENEZUELA, S.A. CORPOGUANIPA, S.A., AND PDVSA PETRÓLEO, S.A. IN SUPPORT OF THEIR CROSS-MOTION TO DISMISS FOR LACK OF JURISDICTION AND IN OPPOSITION TO MOTION OF PHILLIPS PETROLEUM COMPANY VENEZUELA LIMITED AND CONOCOPHILLIPS PETROZUATA B.V.'S FOR ORDER AUTHORIZING THE ISSUANCE OF A WRIT OF ATTACHMENT *FIERI FACIAS*

OF COUNSEL:

Joseph D. Pizzurro (pro hac vice pending)
Kevin A. Meehan (pro hac vice pending)
CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP
101 Park Avenue
New York, NY 10178
(212) 696-6000
jpizzurro@curtis.com
kmeehan@curtis.com

January 6, 2020

HEYMAN ENERIO
GATTUSO & HIRZEL LLP
Samuel T. Hirzel, II (#4415)
300 Delaware Avenue, Suite 200
Wilmington, DE 19801
(302) 472-7300
SHirzel@hegh.law

*Attorney for Defendants Petróleos de Venezuela, S.A., Corpoguanipa, S.A., and PDVSA Petróleo, S.A.*

## <u>TABLE OF CONTENTS</u>

NATURE AND STAGE OF PROCEEDINGS ..............................................................................1

SUMMARY OF ARGUMENT ...............................................................................................3

STATEMENT OF FACTS ....................................................................................................4

ARGUMENT ......................................................................................................................8

    I.      ConocoPhillips Is Not Entitled to Enforce the SDNY Judgment or Attach
          the PDVH Shares under the Settlement Agreement .................................................8

    II.     The Venezuelan Sanctions Regulations Mandate Vacatur of the Registered
          Judgment and Denial of the Attachment Motion ...................................................10

    III.    The Attachment Motion Should Be Denied Pursuant to Section 1610(c) .............14

CONCLUSION ................................................................................................................16

## **TABLE OF AUTHORITIES**

**Pg.**

**Cases**

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela,*
    333 F. Supp. 3d 380 (D. Del. 2018).......................................................................... 11

*Crystallex Int'l Corp. v. PDV Holding,*
    2019 U.S. Dist. LEXIS 214167 (D. Del. Dec. 12, 2019).......................................... 7

*Dames & Moore v. Regan,*
    453 U.S. 654 (1981)............................................................................................. 13, 14

*Dean Witter Reynolds, Inc. v. Fernandez,*
    741 F.2d 355 (11th Cir. 1984) ............................................................................. 13, 14

*Freedman v. Hason,*
    65 N.Y.S.3d 59 (N.Y. App. 2d Dep't 2017) ............................................................ 10

*Inter-American Dev. Bank v. NextG Telecom Ltd.,*
    503 F. Supp. 2d 687 (S.D.N.Y. 2007) ..................................................................... 10

*Jiménez v. Palacios,*
    C.A. No. 2009-0490-KSJM, 2019 WL 3526479 (Del. Ch. Aug. 12, 2019)............... 5

*Ned Chartering & Trading, Inc. v. Republic of Pakistan,*
    130 F. Supp. 2d 64 (D.D.C. 2001).......................................................................... 15

*Phillips Petroleum Company Venezuela Ltd., et al., v. Petróleos de Venezuela, S.A., et al.,*
    No. 18-cv-03716-VEC, [D.E. 8-1] (S.D.N.Y.) .......................................................... 4

*Simon v. Southern R. Co.,*
    236 U.S. 115 (1915).................................................................................................. 14

*United States v. Amirnazmi,*
    645 F.3d 564 (3d Cir. 2011) ..................................................................................... 13

**Statutes**

28 U.S.C. § 1610(c) ..................................................................................... passim

50 U.S.C. § 1702......................................................................................................... 13

**Federal Rules**

FED. R. CIV. P. 60(b)(4) ............................................................................................... 1

**Executive Orders & Federal Regulations**

31 C.F.R. § 515.310 ................................................................................................................. 13

31 C.F.R. § 591.201 ................................................................................................................. 15

31 C.F.R. § 591.202 ............................................................................................................ 12, 14

31 C.F.R. § 591.310 ............................................................................................................ 13, 14

31 C.F.R. § 591.407 ........................................................................................................... passim

31 C.F.R. § 591.506 ................................................................................................................. 12

Exec. Order No. 13808,
    82 Fed. Reg. 41,155 (Aug. 27, 2017) ...................................................................................... 9

Exec. Order No. 13850,
    83 Fed. Reg. 55,243 (Nov. 1, 2018) ............................................................................ 6, 11, 15

**Legislative History**

H.R. Rep. No. 94-1487 (1976) ................................................................................................. 15

**Other Authorities**

Statement from President Donald J. Trump Recognizing Venezuelan National Assembly
    President Juan Guaido as the Interim President of Venezuela (Jan. 23, 2019) ........................ 6

U.S. Dept. of Treasury, Determination Pursuant to Section 1(a)(i) of Executive Order 13850,
    dated Jan. 28, 2019 ................................................................................................................. 6

Petróleos de Venezuela, S.A. ("PDVSA"), Corpoguanipa, S.A. ("Corpoguanipa"), and PDVSA Petróleo, S.A. ("PPSA") (collectively "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss this proceeding and to vacate the registered judgment docketed by this Court on November 26, 2019 [D.I. 1] (the "Registered Judgment") pursuant to FED. R. CIV. P. 60(b)(4) and in opposition to the Motion for an Order Authorizing the Issuance of a Writ of Attachment *Fieri Facias* [D.I. 2] (the "Attachment Motion") filed by Phillips Petroleum Company Venezuela Limited and ConocoPhillips Petrozuata B.V. (together, "ConocoPhillips" or "Plaintiffs") that seeks an attachment of PDVSA's shares of PDV Holding, Inc. ("PDVH").

## NATURE AND STAGE OF PROCEEDINGS

ConocoPhillips commenced this proceeding by registering a judgment it obtained from the United States District Court for the Southern District of New York (the "SDNY Judgment") confirming its arbitral award against PDVSA (the "Award"). ConocoPhillips is further seeking to enforce the SDNY and Registered Judgments through an attachment of PDVSA's shares of PDVH (the "PDVH shares"), which are blocked property under the Venezuelan sanctions program. The U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") has issued amended Venezuelan sanctions regulations that explicitly prohibit "the enforcement of any lien, judgment, arbitral award, decree, or other order through execution, garnishment, or other judicial process purporting to transfer or otherwise alter or affect property" without a specific license from OFAC. 31 C.F.R. § 591.407. ConocoPhillips does not purport to have even applied for, let alone obtained, the requisite specific license from OFAC. For the reasons explained below, the Venezuelan sanctions regulations mandate vacatur of the Registered Judgment, denial of the Attachment Motion, and dismissal of these proceedings.

As an initial matter, ConocoPhillips is not entitled to enforce the SDNY Judgment or

seek an attachment of the PDVH shares under the parties' "Settlement Agreement."[1]  Pursuant to

that Agreement, ConocoPhillips agreed to refrain from enforcing the SDNY Judgment and from

seeking to attach any of PDVSA's property absent any breach of PDVSA's payment obligations

under the Settlement Agreement.  While ConocoPhillips alleges that PDVSA has breached its

payment obligations, PDVSA's performance was frustrated and rendered impossible by the

changes to the Venezuelan sanctions program, which blocked PDVSA's property and prohibited

U.S. persons, such as ConocoPhillips, from receiving any funds from PDVSA without a license

from OFAC.  Again, ConocoPhillips does not purport to have obtained, a specific license from

OFAC.  PDVSA's continued performance would have resulted in a violation of the OFAC

sanctions, and the Settlement Agreement expressly states that the parties are not obliged to

perform any obligations that would cause or facilitate a violation of U.S. regulations.  Thus, the

Settlement Agreement precludes ConocoPhillips from enforcing the SDNY Judgment.

Accordingly, this proceeding should be dismissed.

Moreover, before ConocoPhillips registered the SDNY Judgment in this Court, OFAC

issued new Venezuelan sanctions regulations that explicitly state that "the **enforcement** of any

lien, **judgment**, [or] arbitral award" against PDVSA "**is prohibited** unless authorized pursuant

to a specific license issued by OFAC pursuant to this part."  31 C.F.R. § 591.407 (emphasis

added).  Those regulations also make clear that there can be no attachment of PDVSA's property

in the United States absent a "specific license" from OFAC.  The Venezuelan sanctions

regulations further provide that any unlicensed judgment or attachment is null and void.  Again,

ConocoPhillips does not purport to have any such specific license.  Accordingly, the Registered

---

[1] A true and correct copy of the relevant portions of the Settlement Agreement is appended as Exhibit B to the Declaration of Kevin A. Meehan, dated January 6, 2020 ("Meehan Decl.").

Judgment must be vacated as void, and the Attachment Motion must be denied.

Finally, the Foreign Sovereign Immunities Act of 1976 ("FSIA") prohibits the enforcement of any judgment absent a court order determining, among other things, that a reasonable period of time has elapsed following the entry of judgment, 28 U.S.C. § 1610(c).  In light of the particular circumstances of this case, it is inherently unreasonable to permit ConocoPhillips to commence enforcement of its judgment pursuant to Section 1610(c) until such time as ConocoPhillips obtains a specific license from OFAC or OFAC lifts the prohibition on the enforcement of judgments and attachments.

## SUMMARY OF ARGUMENT

1.       ConocoPhillips is not entitled to enforce the SDNY Judgment or seek an attachment of PDVSA's property – including the PDVH shares – absent a breach of the Settlement Agreement.  No such breach has occurred because PDVSA's performance under that Settlement Agreement has been frustrated and rendered impossible as a result of the changes to the Venezuelan sanctions program.  Under the terms of the Settlement Agreement, PDVSA has no obligation to make payments that would cause or facilitate a violation of U.S. regulations.  Because ConocoPhillips cannot establish a breach of the Settlement Agreement, it cannot seek to enforce the SDNY Judgment in this Court.  Thus, this proceeding should be dismissed.

2.       The Venezuelan sanctions regulations explicitly prohibit judgment creditors of PDVSA, such as ConocoPhillips, from attempting to enforce their judgments against PDVSA or to attach its property without a specific license from OFAC.  ConocoPhillips does not purport to have a specific license from OFAC authorizing it to register its judgment in this Court or to seek an attachment of the PDVH shares.  Accordingly, this Court must vacate the Registered Judgment and deny the Attachment Motion.

3.      It is inherently unreasonable for ConocoPhillips to commence enforcement of its judgment under 28 U.S.C. § 1610(c) until such time as it obtains a specific license from OFAC or OFAC lifts the relevant sanctions.

## STATEMENT OF FACTS

Plaintiffs are subsidiaries of ConocoPhillips Company that participated in two crude oil projects in Venezuela, the "Petrozuata Project" and the "Hamaca Project." Pls. Br. at p. 4, D.I. 3. Those projects were governed by "Association Agreements," which provided that PPSA and Corpoguanipa were to indemnify ConocoPhillips with respect to certain "Discriminatory Actions" that might be taken by the Bolivarian Republic of Venezuela (the "Republic"). Decl. of Marcus J. Green ¶ 9 ("Green Decl."), D.I. 4. PPSA and Corpoguanipa are subsidiaries of PDVSA, and PDVSA guaranteed their indemnification obligations under the Association Agreements. *Id.* On October 10, 2014, ConocoPhillips commenced an arbitration conducted under the auspices of the International Chamber of Commerce (the "ICC") asserting claims for indemnification for alleged Discriminatory Actions under the respective Association Agreements as well as claims for willful breach and *hecho illicito*. Award ¶ 65.[2]

On April 24, 2018, the Tribunal issued the Award. *Id.* The Tribunal dismissed ConocoPhillips' claims for willful breach and *hecho illicito* but nevertheless found Defendants contractually responsible to indemnify ConocoPhillips. *Id.* ¶ 1163. ConocoPhillips was awarded only a small fraction of the roughly $20 billion initially sought. *Id.* On July 19, 2018, the ICC granted the Defendants' application for correction of the Award and issued an addendum to the

---

[2] ConocoPhillips submitted a copy of the Award in the confirmation action. *See Phillips Petroleum Company Venezuela Ltd., et al., v. Petróleos de Venezuela, S.A., et al.*, No. 18-cv-03716-VEC, [D.I. 8-1] (S.D.N.Y.) (filed Apr. 26, 2018).

Award reducing the total amount of compensation to $1,887,587,749.06.[3]

ConocoPhillips commenced an action to confirm the Award in the United States District Court for the Southern District of New York.  During the pendency of the confirmation action, the parties entered into the Settlement Agreement.  Pursuant to the terms of the Settlement Agreement, the parties filed a stipulation and consent to judgment in the confirmation action, which was entered by the court as the SDNY Judgment on August 23, 2018.  For its part, ConocoPhillips agreed not to take any actions to enforce the Award or the SDNY Judgment unless PDVSA defaulted on its payment obligations and did not cure its default within 30 days. Green Decl. Ex. 6.  The parties represented that they would comply with all applicable laws in the performance of the Agreement, and agreed that none of the parties were obliged to take any actions that would cause or facilitate a violation of any applicable laws.  Meehan Decl. Ex. B § 25.  The Settlement Agreement is governed by New York law and designates New York courts as the exclusive venue for adjudicating any controversy or claims arising out of the Settlement Agreement or any breach of that Agreement.  *Id.* §§ 14-15.

At the time the Settlement Agreement was executed, PDVSA's board of directors had been appointed by former President Nicolás Maduro.  *See Jiménez v. Palacios,* C.A. No. 2009-0490-KSJM, 2019 WL 3526479, at *8 (Del. Ch. Aug. 12, 2019).  Subsequently, Venezuela's National Assembly declared Maduro's presidency illegitimate on January 15, 2019.  *Id.* at *7. "Invoking Article 233 of the Venezuelan Constitution, the National Assembly's president, Juan Guaidó, was named the Interim President of Venezuela on January 23, 2019," to serve until free and fair elections can be held.  *Id.*  That same day, U.S. President Donald J. Trump officially

---

[3] A true and correct copy of the Addendum to the Final Award is appended as Exhibit A to the Meehan Decl.

recognized Mr. Guaidó as Interim President of Venezuela.  *See id.* at \*8-9 (quoting Statement

from President Donald J. Trump Recognizing Venezuelan National Assembly President Juan

Guaido as the Interim President of Venezuela (Jan. 23, 2019)).  Thereafter, Interim President

Guaidó exercised his constitutional and statutory authority to appoint an ad hoc Administrative

Board for PDVSA.  *See id.* at \*6-7.

On January 28, 2019, OFAC designated PDVSA as a Specially Designated National

("SDN") for purposes of the Venezuela sanctions.[4]  Treasury Secretary Mnuchin explained that

PDVSA was designated as an SDN in order "to support Interim President Juan Guaidó, the

National Assembly, and the Venezuelan people's efforts to restore their democracy," and to

"prevent further diverting of Venezuela's assets by Maduro and preserve these assets for the

people of Venezuela."[5]  As a result of the designation of PDVSA as an SDN, all U.S. persons

were prohibited from transacting in PDVSA's blocked property, including "the receipt of any

contribution or . . . funds, goods, or services" from PDVSA, without a license from OFAC.

Exec. Order No. 13850 §§ 1(a), 4(b), 83 Fed. Reg. 55,243 (Nov. 1, 2018) ("E.O. 13850").

ConocoPhillips does not purport to have a license from OFAC authorizing it to receive payments

from PDVSA under the Settlement Agreement following PDVSA's designation as an SDN.[6]

ConocoPhillips claims that PDVSA breached the Settlement Agreement in or around

[4] U.S. Dept. of Treasury, Determination Pursuant to Section 1(a)(i) of Executive Order 13850 (Jan. 28, 2019), *available at* https://www.treasury.gov/resourcecenter/sanctions/Programs/Documents/vz_sector_determination_oil_20190128.pdf.

[5] U.S. Dep't of Treasury, *Treasury Sanctions Venezuela's State-Owned Oil Company Petroleos de Venezuela, S.A.* (Jan. 28, 2019), https://home.treasury.gov/news/press-releases/sm594.

[6] Prior to OFAC's designation of PDVSA as an SDN, ConocoPhillips obtained a revocable license from OFAC authorizing it to enter into and execute the Settlement Agreement with PDVSA.  OFAC License No. VENEZUELA-2018-353747-1, § I (Jul. 24, 2018).  As explained below, that license did not authorize ConocoPhillips to continue receiving payments from PDVSA after its assets were blocked.  *See infra* at pp. 8-9.

October 2019 – nearly a year after OFAC designated PDVSA as an SDN on January 28, 2019 – and that the deadline for curing the default expired on November 14, 2019. *Id.* at 5.

Effective November 22, 2019, OFAC significantly amended and expanded the regulations governing the Venezuelan sanctions program. Among other things, OFAC prohibited "the entry into a settlement agreement or the enforcement of any lien, judgment, arbitral award, decree, or other order through execution, garnishment, or other judicial process purporting to transfer or otherwise alter or affect property or interests in property blocked" under the relevant Executive Orders, absent "a specific license issued by OFAC." 31 C.F.R. § 591.407. ConocoPhillips does not purport to have even applied for a specific license from OFAC authorizing it to enforce the Award or SDNY Judgment or to seek an attachment of the PDVH shares or any other property of PDVSA.

Nevertheless, on November 26, 2019, ConocoPhillips registered the SDNY Judgment in this Court pursuant to 28 U.S.C. § 1963 and thereby obtained the Registered Judgment.[7] D.I. 1. That same day, ConocoPhillips filed the Attachment Motion, which does not even mention the relevant OFAC sanctions regulations. D.I. 2; D.I. 3. Counsel for Plaintiffs purports to have provided "notice" of the Attachment Motion to PDVSA by mailing the motion papers to the Republic's embassy in Washington, D.C. and to PDVSA's offices in Caracas, which are occupied by the illegitimate former Maduro regime as well as by emailing the motion papers to Defendants' counsel. Green Decl. ¶¶ 3-4. ConocoPhillips does not purport to have even

---

[7] ConocoPhillips and its counsel were no doubt aware of OFAC's amendments to the Venezuela sanctions regulations. ConocoPhillips has two other pending actions against PDVSA in this Court: *ConocoPhillips Petrozuata B.V., et al. v. Petróleos de Venezuela, S.A., et al.*, Case Nos. 1:16-cv-00904-LPS and 1:17-cv-00028 (D. Del.). This Court has stayed those actions, in part, because of the recent amendments to the Venezuelan sanctions regulations. *See Crystallex Int'l Corp. v. PDV Holding*, C.A. No. 15-cv-1082-LPS, 2019 U.S. Dist. LEXIS 214167 (D. Del. Dec. 12, 2019).

attempted to serve Defendants in accordance with the FSIA.

## ARGUMENT

**I.    ConocoPhillips Is Not Entitled to Enforce the SDNY Judgment
       or Attach the PDVH Shares under the Settlement Agreement**

Pursuant to the Settlement Agreement, ConocoPhillips agreed to suspend all actions to

enforce the SDNY Judgment and to refrain from bringing any actions to attach any property of

PDVSA.  Indeed, the Settlement Agreement states:

> ConocoPhillips … shall refrain from seizing or executing on assets
> to satisfy or enforce any of the judgments entered by consent
> pursuant to Article 6.0 … [and] shall refrain from bringing, and shall
> suspend, withdraw, dismiss without prejudice or stay (as applicable
> to the proceedings), all legal proceedings, attachments or other
> measures to enforce the ICC Award … so long as no Event of
> Payment Default under this Agreement has occurred.

Meehan Decl. Ex. B § 8.0.  While ConocoPhillips alleges that PDVSA failed to make payments

due under the Settlement Agreement, those payment obligations were frustrated and rendered

impossible to perform by the changes to the Venezuelan sanctions program and the failure of

ConocoPhillips to obtain the requisite licenses needed to carry out the Settlement Agreement.

Thus, PDVSA is not in breach of the Settlement Agreement, and ConocoPhillips is contractually

precluded from seeking to enforce the SDNY Judgment or to obtain an attachment of the PDVH

Shares.

Several months after the execution of the Settlement Agreement, OFAC designated

PDVSA as an SDN under E.O. 13850.  As a result, PDVSA's property in the United States,

including the PDVH shares, was blocked, and all U.S. persons, such as ConocoPhillips, were

prohibited from receiving any funds from PDVSA without a license from OFAC.  *See* E.O.

13850 §§ 1(a), 4(b).  While ConocoPhillips did obtain a revocable license from OFAC

authorizing it to enter into and execute the Settlement Agreement with PDVSA, that license only

covers transactions prohibited under preexisting Executive Orders.[8] *See* OFAC License No. VENEZUELA-2018-353747-1 (Jul. 24, 2018).  It does not authorize transactions prohibited by E.O. 13850, which was issued months after ConocoPhillips' license.  Nor does the license authorize transactions with PDVSA following PDVSA's designation as an SDN and the blocking of its assets.  In fact, the license explicitly states that it "does not authorize . . . the debiting of any blocked account, the entry of any judgment or order that effects a transfer of blocked property or the execution of any judgment against [blocked] property." *Id.* § II(a).  The license further states that it "does not authorize the . . . receipt of funds or other property, directly or indirectly, from any entity or individual whose property or interests in property are blocked." *Id.* § II(b).  In other words, ConocoPhillips' license does not authorize it to receive any payments from PDVSA under the Settlement Agreement.

Under the express terms of the Settlement Agreement, PDVSA was not obliged to make payments that would violate the OFAC sanctions regulations.  The Settlement Agreement states:

> The Parties represent that this Agreement has been executed obeying the laws, treaties, regulations and applicable government provisions, including those of Venezuela and the United States of America and their respective anti-corruption regulations (collectively, "Applicable Laws").  Likewise, the Parties confirm that such Applicable Laws will be abided in the performance of the obligations of this Agreement. … **Finally, none of the Parties is obliged to take or not take any action if such Party considers, at its sole option and discretion, that performing such an action or not will lead to, cause or facilitate the violation of any Applicable Law**.

Meehan Decl. Ex. B § 25 (emphasis added).  Because ConocoPhillips did not have a specific

---

[8] ConocoPhillips needed a license to enter into the Settlement Agreement because, at that time, the Venezuelan sanctions program prohibited entering into contracts with PDVSA that provided PDVSA with payment terms in excess of 90 days.  *See* Exec. Order No. 13808 § 1(a)(i), 82 Fed. Reg. 41,155 (Aug. 29, 2017).

license from OFAC, continuing to make payments to ConocoPhillips would have caused or facilitated a violation of Applicable Laws – *i.e.* the OFAC regulations.  Therefore, pursuant to Section 25 of the Settlement Agreement, PDVSA was not obliged to make such illegal payments.

Furthermore, changes to the Venezuelan sanctions program rendered PDVSA's performance impossible.  The Settlement Agreement is governed by New York law.  *See id.* § 14.  Under New York law, a "settlement agreement is a contract, subject to contract defenses, including impossibility of performance."  *Freedman v. Hason*, 65 N.Y.S.3d 59, 62 (N.Y. App. 2d Dep't 2017).  Impossibility can arise from changes to government regulations.  *See Inter-American Dev. Bank v. NextG Telecom Ltd.*, 503 F. Supp. 2d 687, 696 (S.D.N.Y. 2007).  As one court explained:

> In general impossibility may be equated with an inability to perform as promised due to intervening events, such as an act of state or destructing of the subject matter of the contract.  **A government order prohibiting performance under a contract may be grounds for claiming impossibility**, but only where the fault of the party owning performance did not contribute to the order.

*Id.* (internal citations and quotation marks omitted; emphasis added).  As explained above, the changes to the Venezuelan sanctions regime have frustrated the ability of PDVSA to perform under the Settlement Agreement.  PDVSA is not to blame for the current state of affairs.  To the contrary, ConocoPhillips could have sought a license from OFAC authorizing it to receive payments from PDVSA.  However, ConocoPhillips does not purport to have applied for, much less obtained, the requisite license from OFAC.  Unless and until it obtains a specific license from OFAC, ConocoPhillips cannot seek to enforce the SDNY Judgment in this Court or seek an attachment of the PDVH shares.

## II.   The Venezuelan Sanctions Regulations Mandate Vacatur of the Registered Judgment and Denial of the Attachment Motion

ConocoPhillips relies heavily on this Court's decision to issue a writ of attachment of the

PDVH shares in *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela ("Crystallex")*, 333 F. Supp. 3d 380 (D. Del. 2018). However, ConocoPhillips ignores the material regulatory changes that have occurred following this Court's issuance of the writ of attachment in *Crystallex* in August 2018. The current state-of-play is vastly different because of two significant regulatory changes that occurred after this Court decided *Crystallex* that preclude ConocoPhillips' attempts to enforce its judgment and attach the PDVH shares.

First, when this Court decided *Crystallex* in August 2018, PDVSA had not been designated as an SDN and its assets were not blocked. The Treasury Secretary designated PDVSA as an SDN pursuant to E.O. 13850 several months later, in January 2019. As a result of that designation, all property and interests in property of PDVSA that are in the United States or that come into the possession or control of a U.S. person "are blocked and may not be transferred, paid, exported, withdrawn, or otherwise dealt in." E.O. 13850 § 1(a). Thus, unlike in *Crystallex*, the PDVH shares are now blocked property and cannot be dealt in under the Venezuelan sanctions program.

Second, OFAC's recent amendments to the Venezuelan sanctions regulations were not promulgated until after the Third Circuit issued the mandate in *Crystallex* and just days prior to the initiation of this proceeding. The new amended Venezuelan sanctions regulations specify that those regulations apply all of the executive orders issued pursuant to the International Emergency Economic Powers Act ("IEEPA") to address the ongoing crisis in Venezuela, including E.O. 13850. The amendments also include a new regulation, which states:

> Notwithstanding the existence of any general license issued under this part, or issued under any Executive order issued pursuant to the national emergency declared in E.O. 13692, the entry into a settlement agreement or **the enforcement of any lien, judgment, arbitral award**, decree, or other order **through execution, garnishment, or other judicial process purporting to transfer** or otherwise alter or affect property or interests in

> property blocked pursuant to § 591.201, as referenced in § 591.506(c), **is prohibited** unless authorized pursuant to a specific license issued by OFAC pursuant to this part.[9]

31 C.F.R. § 591.407 (emphasis added).  On December 9, 2019, OFAC issued guidance in the form of Frequently Asked Questions ("FAQs"), which state that, under the new regulations, "a specific license from OFAC would be required for measures such as … Levying Upon, **Attaching**, [or] Encumbering" any property of PDVSA.  U.S. Dep't of Treasury, OFAC, Other Sanctions Programs, Venezuela Sanctions, FAQ No. 808 (Dec. 9, 2019), *available at* https://www.treasury.gov/resource-center/faqs/sanctions/pages/faq_other.aspx#808 ("OFAC FAQ 808") (emphasis added).  Thus, Section 591.407 leaves no doubt that the enforcement of any judgment against PDVSA through the attachment of any of its property is expressly prohibited absent a specific license from OFAC.

      The Venezuelan sanctions regulations further state that "any attachment, judgment, decree, lien, execution, garnishment, or other judicial process is *null and void* with respect to any property and interests in property blocked pursuant to § 591.201."  31 C.F.R. § 591.202(e) (emphasis added).  The nullification of judgments and attachments are expressly provided for in IEEPA, which authorizes the President, upon the declaration of a national emergency, to "nullify, void, prevent or prohibit, any acquisition . . . use, transfer . . . or dealing in, or exercising any right, power, or privilege with respect to, or transactions involving, any property

---

[9] Section 591.506(c) of the Venezuelan sanctions regulations states:

> Entry into a settlement agreement or the enforcement of any lien, judgment, arbitral award, decree, or other order through execution, garnishment, or other judicial process purporting to transfer or otherwise alter or affect property or interests in property blocked pursuant to § 591.201 is prohibited unless licensed pursuant to this part.

31 C.F.R. § 591.506(c).

in which any foreign country or a national thereof has any interest."  50 U.S.C. § 1702(a)(1)(B).

The Supreme Court upheld nearly identical regulations under the Iran Sanctions program, stating

that the President had the authority under IEEPA to prohibit attachments of blocked property and

to retroactively nullify any such attachments.  *See Dames & Moore v. Regan*, 453 U.S. 654, 673-

75 (1981); *see also United States v. Amirnazmi*, 645 F.3d 564, 575 (3d Cir. 2011).

ConocoPhillips was required to obtain a specific license from OFAC before registering

the SDNY Judgment in this Court.  Section 591.407 prohibits the unlicensed enforcement of a

judgment through a "judicial process purporting to **transfer**" interests in blocked property, and

the Venezuela sanctions regulations explicitly define a "**transfer**" of interests in blocked

property to include "**the issuance, docketing, or filing of**, or levy of or under, **any judgment**,

decree, **attachment**, injunction, execution, or other judicial or administrative process or order, or

the service of any garnishment."  31 C.F.R. § 591.310 (emphasis added).  In *Dean Witter*

*Reynolds, Inc. v. Fernandez*, the Eleventh Circuit construed nearly identical language in the

Cuban sanctions regulations that prohibited "the issuance, docketing, filing, or the levy of or

under any judgment, decree, attachment, execution, or other judicial or administrative process or

order" in the absence of a license.  741 F.2d 355, 357 (11th Cir. 1984) (quoting 31 C.F.R.

§ 515.310).  It held that, although a license was not required to initiate the action, the "[e]ntry of

judgment triggered the application of the Regulations" and therefore "a district court should not

enter judgment" before the plaintiff obtains a license.  *Id.* at 362-63.  In other words, while the

OFAC regulations may permit a plaintiff to commence an action to litigate liability, the plaintiff

must obtain a license before a judgment can be entered in its favor.

The Registered Judgment is separate from the SDNY Judgment and "the equivalent of a

new judgment," that was issued and docketed in this proceeding.  *Home Port Rentals*, 252 F.3d

399, 405 (5th Cir. 2001).  It therefore constitutes "the issuance, docketing or filing of" a judgment under the Venezuelan sanctions regulations.  31 C.F.R. § 591.310.  ConocoPhillips was thus required to obtain a specific license from OFAC to enforce the SDNY Judgment before registering it in this Court.  *See Dean Witter*, 741 F.2d at 362-63.  But it does not purport to have applied for, or obtained, a specific license from OFAC authorizing it to enforce the SDNY Judgment by registering it in this Court.  Absent such a specific license, the Registered Judgment is "null and void."  31 C.F.R. § 591.202(e).  Accordingly, the Registered Judgment must be vacated as void.  *See Dames & Moore*, 453 U.S. at 673-74.

Even putting aside the invalidity of the Registered Judgment, the Attachment Motion must be denied under the OFAC sanctions.  While ConocoPhillips seeks to attach PDVSA's shares of PDVH, those shares are blocked property.  Any attachment of those shares is prohibited absent a specific license from OFAC.  *See* 31 C.F.R. §§ 591.202(e), 591.407.  Again, ConocoPhillips does not purport to have such a license.  Any writ of attachment ordered by this Court would therefore be void *ab initio*.  *See* 31 C.F.R. § 591.202(e).  Courts cannot grant relief that would be illegal or a nullity.  *See Simon v. Southern R. Co.*, 236 U.S. 115, 132 (1915) ("Being void the plaintiff acquired no rights thereby and could be enjoined by a Federal court from attempting to enforce what is a judgment in name but a nullity in fact.").  Thus, this Court must deny the Attachment Motion.

## III.    **The Attachment Motion Should Be Denied Pursuant to Section 1610(c)**

The FSIA directs that "no attachment or execution . . . shall be permitted until the court has . . . determined that a reasonable period of time has elapsed following the entry of judgment."  28 U.S.C. § 1610(c).  ConocoPhillips argues that a period of few weeks or months following entry of judgment is "reasonable" for purposes of Section 1610(c).  Pls. Br. at p. 7. However, the FSIA does not specify any particular amount of time as reasonable *per se* for

14

purposes of Section 1610(c).  Courts must, instead, determine what is "reasonable" on a case-by-case basis in light of the particular circumstances at issue.  *Ned Chartering & Trading, Inc. v. Republic of Pakistan*, 130 F. Supp. 2d 64, 67 (D.D.C. 2001).

While ConocoPhillips principally relies on *Ned Chartering*, that decision makes clear that the determination of whether a "reasonable period of time has elapsed" under Section 1610(c) depends on the unique circumstances and practical realities of the case, *see* 130 F. Supp. 2d at 67, and cites to the legislative history, which states:

> In determining whether the period has been reasonable, the courts should take into account procedures, including legislation, that may be necessary for payment of a judgment by a foreign state, which may take several months; representations by the foreign state of steps being taken to satisfy the judgment; or any steps being taken to satisfy the judgment; or evidence that the foreign state is about to remove assets from the jurisdiction to frustrate satisfaction of the judgment.

H.R. Rep. No. 94-1487, at 30 (1976).  In other words, Section 1610(c) requires courts to determine whether the commencement of enforcement proceedings is reasonable based on the foreign sovereign's ability to pay the judgment at the time enforcement is being sought.

Here, PDVSA is currently unable to make payments to ConocoPhillips under the prevailing Venezuelan sanctions, which make clear that ConocoPhillips cannot receive any such payments without a specific license from OFAC.  *See* E.O. 13850; 31 C.F.R. §§ 591.201, 591.407.  There is no indication that ConocoPhillips has applied for, or obtained, a license from OFAC authorizing it to continue to receive payments from PDVSA after OFAC designated PDVSA an SDN, blocked its assets and prohibited the enforcement of any judgments against PDVSA.  Unless and until such time as ConocoPhillips obtains a specific license from OFAC or the relevant sanctions are lifted, it is unreasonable for ConocoPhillips to commence enforcement of its judgment pursuant to Section 1610(c).

Finally, this Court has stayed all other actions filed by other creditors seeking to attach the PDVH shares, in part, because of the changes to the Venezuelan sanctions program. *See* 2019 U.S. Dist. LEXIS 214167, at *9.  There is no reason for this proceeding to move forward when all the other actions pending before this Court have been stayed.  Thus, at minimum, this Court should stay this proceeding consistent with the stay issued in the order creditor actions.

## **CONCLUSION**

For the foregoing reasons, this Court should vacate the Registered Judgment, deny the Attachment Motion, and dismiss this proceeding.

HEYMAN ENERIO
GATTUSO & HIRZEL LLP

*/s/ Samuel T. Hirzel, II*

Samuel T. Hirzel, II (#4415)
300 Delaware Avenue, Suite 200
Wilmington, DE 19801
(302) 472-7300
SHirzel@hegh.law

OF COUNSEL:

Joseph D. Pizzurro (pro hac vice pending)
Kevin A. Meehan (pro hac vice pending)
CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP
101 Park Avenue
New York, NY 10178
(212) 696-6000
jpizzurro@curtis.com
kmeehan@curtis.com

*Attorney for Defendants Petróleos de
Venezuela, S.A., Corpoguanipa, S.A., and
PDVSA Petróleo, S.A.*

Dated: January 6, 2020

17