# Exhibit A

20549/ASM/JPA (C-20550/ASM)                              19 July 2018

**PHILLIPS PETROLEUM COMPANY VENEZUELA LIMITED**

**CONOCOPHILLIPS PETROZUATA B.V.**

CLAIMANTS

v.

**PETRÓLEOS DE VENEZUELA, S.A.**

**CORPOGUANIPA, S.A.**

**PDVSA PETRÓLEO, S.A.**

RESPONDENTS

**ADDENDUM to the Final Award of 24 April 2018**

**Arbitral Tribunal**
Prof. Laurent Aynès
Prof. Andrea Giardina
Dr. Laurent Lévy (President)

**Secretary to the Arbitral Tribunal**
Ms. Eva Kalnina

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................2

I.   INTRODUCTION .................................................................................................................3

      A.   PARTIES ............................................................................................................................3
           1.   The Claimants ......................................................................................................... 3
           2.   The Respondents..................................................................................................... 4
      B.   THE TRIBUNAL .................................................................................................................6

II.   PROCEDURAL BACKGROUND ........................................................................................7

III.   THE PARTIES' POSITIONS ................................................................................................7
      A.   THE RESPONDENTS' POSITION.........................................................................................7
      B.   THE CLAIMANTS' POSITION.............................................................................................9

IV.   LEGAL FRAMEWORK .....................................................................................................11

V.   ANALYSIS..........................................................................................................................12

VI.   OPERATIVE PART ............................................................................................................15

**I.   INTRODUCTION**

1. Pursuant to Article 35(2) of the ICC Rules, the Tribunal issues the present addendum (the "Addendum") on the Respondents' application for interpretation of the Final Award of 24 April 2018 in ICC Case No. 20549/ASM/JPA (C-20550/ASM) (the "Final Award").

2. The capitalized and not defined terms and abbreviations used in this Addendum shall have the same meaning as in the Final Award.

   **A.   PARTIES**

      **1.   The Claimants**

1. Claimant 1 is:

   PHILLIPS PETROLEUM COMPANY VENEZUELA LIMITED ("CPH")
   P.O. Box HM 1179, Hamilton HM EX
   Canon's Court
   22 Victoria Street
   Hamilton, HM 12
   Bermuda

   Claimant 2 is:

   CONOCOPHILLIPS PETROZUATA B.V. ("CPZ")
   Zurich Tower (15th Floor)
   Muzenstraat 89
   2511 WB Den Haag
   The Netherlands

2. Claimants 1 and 2 (collectively referred to as the "Claimants"), are all engaged in the business of exploration and production of oil and natural gas.

3. The Claimants are represented in this arbitration by:

   Constantine Partasides QC
   Lucy Martinez
   **THREE CROWNS LLP**
   New Fetter Place
   8-10 New Fetter Lane
   London EC4A 1AZ
   United Kingdom
   constantine.partasides@threecrownsllp.com
   lucy.martinez@threecrownsllp.com


   Jan Paulsson
   Luke Sobota
   Kiran N. Gore
   Hugh Carlson

**THREE CROWNS LLP**
2001 Pennsylvania Avenue, Suite 1100
Washington, D.C. 20006
U.S.A.
jan.paulsson@threecrownsllp.com
luke.sobota@threecrownsllp.com
kiran.gore@threecrownsllp.com
hugh.carlson@threecrownsllp.com

D. Brian King
Elliot Friedman
Sam Prevatt
Lee Rovinescu
**FRESHFIELDS BRUCKHAUS DERINGER US LLP**
601 Lexington Avenue, 31st Floor
New York, NY 10022
U.S.A.
brian.king@freshfields.com
elliot.friedman@freshfields.com
sam.prevatt@freshfields.com
lee.rovinescu@freshfields.com

Janet Kelly, General Counsel
Laura M. Robertson, Deputy General Counsel, Litigation and Arbitration
Suzana Blades, Lead Counsel, Arbitrations
Fernando Avila, Senior Counsel, E&P Americas
Alberto Ravell, Senior Legal Counsel
**CONOCOPHILLIPS COMPANY**
600 N. Diary Ashford, ML 1040
Houston, TX 77079
U.S.A.
janet.l.kelly@conocophillips.com
laura.m.robertson@conocophillips.com
suzana.m.blades@conocophillips.com
fernando.a.avila@conocophillips.com
alberto.f.ravell@conocophillips.com

**2. The Respondents**

4. Respondent 1 is:

   PETRÓLEOS DE VENEZUELA, S.A. ("PDVSA")
   Avenida Libertador
   Edificio Petróleos de Venezuela
   Urb. La Campiña
   Caracas, Venezuela

   Respondent 2 is:

   CORPOGUANIPA, S.A. ("Corpoguanipa")
   Avenida Libertador
   Edificio Petróleos de Venezuela
   Urb. La Campiña
   Caracas, Venezuela

    Respondent 3 is:

        PDVSA PETROLEO, S.A. ("PDVSA Petróleo")
        Avenida Libertador
        Edificio Petróleos de Venezuela
        Urb. La Campiña
        Caracas, Venezuela

5. PDVSA Petroleo and Corpoguanipa are referred to jointly as "PDVSA Subsidiaries"; PDVSA and PDVSA Subsidiaries are collectively referred to as the "Respondents".

6. The Respondents are represented in this arbitration by:

    George Kahale, III
    Benard V. Preziosi, Jr
    Simon Batifort
    Miriam Harwood
    J. Benton Heath
    Fuad Zarbiyev
    Arianna Sánchez
    **CURTIS, MALLET-PREVOST, COLT & MOSLE LLP**
    101 Park Avenue
    New York, NY, 10178
    U.S.A.
    gkahale@curtis.com
    bpreziosi@curtis.com
    sbatifort@curtis.com
    mharwood@curtis.com
    ben.heath@curtis.com
    fzarbiyev@curtis.com
    arianna.sanchez@curtis.com

    Tullio Treves
    Irene Petrelli
    **CURTIS, MALLET-PREVOST, COLT & MOSLE LLP**
    3 Corso Matteotti
    20121 Milano
    Italy
    ttreves@curtis.com
    ipetrelli@curtis.com

    Eloy Barbara de Parres
    Dori Yoldi
    **CURTIS, MALLET-PREVOST, COLT & MOSLE, SC**
    Rubén Darío 281, Piso 9
    Col. Bosque de Chapultepec
    11580 México, D.F.
    México
    ebarbara@curtis.com
    dyoldi@curtis.com

    Alfredo De Jesus S.
    Alfredo De Jesus O.
    Eloisa Falcon Lopez

       Marie-Therese Hervella
       **DE JESUS & DE JESUS**[1]
       20, rue Quentin Bauchart
       75008 Paris
       France

    **B.**    **THE TRIBUNAL**

7.    The Arbitral Tribunal is composed of:

       **Dr. Laurent Lévy** (the President of the Tribunal)
       LEVY KAUFMANN-KOHLER
       3-5, rue du Conseil-Général
       P.O. Box 552
       1211 Geneva 4
       Switzerland
       Tel.: +41 22 809 62 00
       Email: laurent.levy@lk-k.com

       **Prof. Laurent Aynès** (arbitrator jointly nominated by the Claimants)
       DARROIS VILLEY BROCHIER
       69 avenue Victor Hugo
       75116 Paris
       France
       Tel.: +33 145 02 1919
       Email: laynes@darroisvilley.com

       **Prof. Andrea Giardina** (arbitrator jointly nominated by the Respondents)
       CHIOMENTI STUDIO LEGALE
       Via XXIV Maggio 43
       I-00187 Rome
       Italy
       Tel.: +39 06 466 221
       Email: andrea.giardina@chiomenti.net

8.    The Secretary to the Tribunal is:

       **Eva Kalnina**
       LÉVY KAUFMANN-KOHLER
       3-5, rue du Conseil-Général
       P.O. Box 552
       1211 Geneva 4
       Switzerland
       Tel.: +41 22 809 62 00
       Email: eva.kalnina@lk-k.com

---

[1] Representing Respondent 1 only.

**II.     PROCEDURAL BACKGROUND**

3.  On 24 April 2018, the Tribunal rendered the Final Award, which the ICC Secretariat notified to the Parties on the same date. The full procedural history and the summary of the facts are contained in the Final Award.

4.  On 11 May 2018, the Tribunal received the Respondents' Application for Correction of the Final Award dated 4 May 2018 (the "Application"). Thus, the Application was made within 30 days from the receipt of the Final Award by the Parties, as required by Article 35 of the ICC Rules; the Claimants did not raise any objection in this regard.

5.  On 15 May 2018, the Tribunal granted leave to the Claimants to respond to the Application by 8 June 2018. The Claimants filed their response on 31 May 2018 (the "Answer").

6.  On 1 June 2018, the Tribunal invited the Respondents to provide some comments on the Answer ("Reply") by 7 June 2018, which the Respondents did.

7.  On 22 June 2018, the Tribunal submitted the draft addendum to the Final Award to the ICC Court for approval.

8.  On 5 July 2018, the ICC Court approved the draft addendum.

**III.    THE PARTIES' POSITIONS**

   **A.    THE RESPONDENTS' POSITION**

9.  The Application seeks the correction of two alleged computation mistakes in the Final Award. The first one concerns the debt repayment for the Petrozuata Project. The second one concerns the Working Capital, Depreciation and other Revenues and Costs ("WDO") toggle in the Abdala Updated Valuation Model ("AUVM").

10. Regarding the first issue, the Respondents argue that, "due to an error in the AUVM, debt repayment for the Petrozuata Project was not reflected in the cash flow calculations for the period subsequent to the valuation date".[2] According to the Respondents, this error automatically occurs when setting the "Discount Rate" toggle in the AUVM to "Custom", as the Tribunal did in order "to implement its

---
[2] Application, p. 3

7

finding of an 18% discount rate".[3] To correct this error, the Respondents request the Tribunal to reduce the amount granted in the Final Award (with respect to the Petrozuata Project in particular) by USD 7,935,448.06.[4]

11. Regarding the WDO toggle, the Respondents refer in particular to paragraphs 1119 and 1120 of the Final Award,[5] which read as follows:

> Having examined the Parties' submissions and the supporting documents, the Tribunal finds that the key issue in dispute pertains to the methodology to be followed for depreciating the Projects' assets. In particular, the disputed issue concerns how the upgrader should be depreciated. Although Mr. Abdala has stated that he applies the depreciation methodology in the Projects' financial statements, he has not supported this statement with documentary evidence. In fact, having examined the Petrozuata Project's financial statements, the Tribunal notes that none of them point to depreciation over a 17 year period as alleged by Mr. Abdala. Rather, these financial statements reflect the methodology applied by the Respondents and constitute sufficient basis for the same to be accepted. In any event, the Tribunal notes that despite the Respondents' opposition to his calculation of depreciation, Mr. Abdala ultimately opines that the differences in calculation of these DCF inputs "does not give rise to material valuation differences". Thus Mr. Abdala appears to accept the Respondents' calculation of depreciation will not produce significantly erroneous results. In the circumstances, the Tribunal is of the view that the Respondents' calculations of depreciation should be accepted.
>
> The Tribunal also notes that the Parties' experts agree on the methodology to be adopted to arrive at working capital requirements but differ only as to the inputs, i.e. revenue, OPEX and CAPEX. Even in this respect, Mr. Abdala opines that the differences in calculation do not give rise to material valuation differences. Hence, the Tribunal considers it appropriate to adopt the Respondents' working capital estimates.

12. The Respondents note that, despite its findings in paragraphs 1119 and 1120, the Tribunal nonetheless set the WDO toggle to "Abdala".[6] By doing so, the Respondents submit, the Tribunal inconsistently awarded damages to the Claimants for WDO notwithstanding having decided "the issues of working capital and depreciation […] in favor of the Respondents".[7] To correct this error, the Respondents request setting the WDO toggle in the AUVM to "B&F", which would further decrease the amount of the Final Award by USD "83,207,406.74".[8]

13. The Respondents note the Claimants' argument that the Final Award only dealt with two out of the three elements of the WDO toggle (i.e. Working Capital and

---

[3] Application, fn. 7.
[4] Application, p. 3
[5] Application, pp. 1-2.
[6] Application, p. 2, referring to Final Award, § 1128(viii)(e).
[7] Application, pp. 2-3.
[8] Application, p. 3.

8

Depreciation), and that, as such, the Tribunal did not depart from its "default position" to maintain the existing "Abdala" setting with respect to the third element of Other Revenues & Costs.[9] However, the Respondents submit that: (i) the Tribunal did not opt for the AUVM because of its "substantive level" of "correctness", thus indicating that the AUVM's "Abdala" settings were not a "default position" needing departure from;[10] (ii) the possibility to disaggregate the WDO toggle into three separate toggles was "hidden" in the AUVM's control panel;[11] and (iii) in any event the "Claimants, which had the burden of proof on all elements of their damage claim, never discussed [the Other Revenues & Costs element] during the course of the case".[12]

14. In the circumstances, "considering that the only two elements of [the WDO toggle] that were discussed and addressed by the Tribunal in the Final Award were decided in Respondents' favor", the "Claimants should not be allowed to fall back on their 'default position'".[13]

15. In light of the above, the Respondents submit that "[i]f the two errors described above are corrected, the amount of compensation relating to the Petrozuata Project is reduced by USD 67,673,086.78, the amount of compensation relating to the Hamaca Project is reduced by USD 30,786,378.89, and the total amount of compensation is reduced by USD 98,459,465.67".[14] The Respondents clarify that "due to interaction effects, this is higher than the amount obtained by simply adding up the reductions resulting from each of the corrections described above".[15]

### B. THE CLAIMANTS' POSITION

16. The Claimants "accept" that a "computational error exists" in respect of the Petrozuata Project debt repayment ("PPDR"), which automatically results from the Tribunal's decision to set a "Custom" discount rate.[16] The Claimants further concede

---

[9] *Infra*, §§ 17-18.
[10] Reply, § 1.
[11] Reply, § 2.
[12] Reply, § 2.
[13] Reply, § 2.
[14] Application, p. 3.
[15] Application, p. 3.
[16] Answer, § 9.

9

that "the impact of correcting that error would be a reduction of the compensation owing in respect of the Petrozuata Project by USD 7,935,448.06".[17]

17. Regarding WDO, the Claimants submit that the Tribunal "chose to adopt the AUVM in preference of the Brailovsky & Flores Model" as it deemed it "the most appropriate valuation model […] to establish the indemnity owed to the Claimants under the DA provisions".[18] Hence, the Tribunal's "default position was to maintain the existing 'Abdala' settings in the AUVM".[19]

18. In this regard, the Claimants: (i) point to how the WDO toggle is composed of three different elements (namely, Working Capital, Depreciation and Other Revenues & Costs), and how the AUVM allowed dealing with each one independently;[20] (ii) submit that the Final Award "does not mention [the Other Revenues & Costs] input expressly" and thus "contains no reasoning justifying a movement away from the default position";[21] and (iii) note that, while paragraphs 1119 and 1120 of the Final Award "expres[s] a preference for Respondents' position", the Tribunal nevertheless "left the WDO toggle set to 'Abdala'", being thus unclear "whether the Tribunal's intention was to maintain the toggle at 'Abdala' as to all three elements or not".[22] For the Claimants, "[t]hat will be a matter for the Tribunal" to determine.[23]

19. The Claimants therefore submit that:

   a. If the Tribunal adjusts for the PPDR only, the amount of compensation awarded with respect to the Petrozuata Project would be of USD 481,399,020.81 (as opposed to USD 489,334,468.87), the amount of compensation awarded with respect to the Hamaca Project would remain unaltered at USD 1,496,712,745.85, with the overall amount awarded being of USD 1,978,111,766.67;[24]

   b. If the Tribunal adjusts for the PPDR and the Depreciation element of the WDO toggle, the amount of compensation awarded with respect to the Petrozuata Project would be of USD 478,689,120.81, and the amount of compensation

---

[17] Answer, § 9.
[18] Answer, § 3, referring to Final Award, § 585.
[19] Answer, § 3.
[20] Answer, § 4.
[21] Answer, § 5.
[22] Answer, § 6.
[23] Answer, § 6.
[24] Answer, § 11.a.

      awarded with respect to the Hamaca Project would be of USD 1,465,926,366.97, with the overall awarded amount being USD 1,944,615,487.78;[25] and

    c. If the Tribunal adjusts for the PPDR and both the Depreciation and Working Capital elements of the WDO toggle, the amount of compensation awarded with respect to the Petrozuata Project would be of USD 457,996,097.98, the amount of compensation awarded with respect to the Hamaca Project would remain unaltered at USD 1,465,926,366.97, with the overall awarded amount being USD 1,923,922,464.95.[26]

20.     The Claimants clarify that, in both alternatives b) and c) above, "the combined impact of the […] changes is greater than the simple sum of the individual changes, due to interaction effects".[27]

## IV.    LEGAL FRAMEWORK

21.     The Respondents' Application is based on Article 35 of the ICC Rules. This provision, which governs the correction of arbitral awards, reads in its relevant parts as follows:

> (1) On its own initiative, the arbitral tribunal may correct a clerical, computational or typographical error, or any errors of similar nature contained in an award, provided such correction is submitted for approval to the Court within 30 days of the date of such award.
>
> (2) Any application of a party for the correction of an error of the kind referred to in Article 35(1), or for the interpretation of an award, must be made to the Secretariat within 30 days of the receipt of the award by such party, in a number of copies as stated in Article 3(1). After transmittal of the application to the arbitral tribunal, the latter shall grant the other party a short time limit, normally not exceeding 30 days, from the receipt of the application by that party, to submit any comments thereon. The arbitral tribunal shall submit its decision on the application in draft form to the Court not later than 30 days following the expiration of the time limit for the receipt of any comments from the other party or within such other period as the Court may decide.

22.     Thus, pursuant to Article 35(2) of the ICC Rules the Tribunal is empowered to decide on the Application. This is not disputed by the Parties.

23.     That being said, Article 35(2) of the ICC Rules does not allow the Tribunal to revisit its legal reasoning or analysis, or to reconsider the Final Award's findings. As stated

---

[25] Answer, § 11.b.
[26] Answer, § 11.c.
[27] Answer, fn. 4.

11

in the Secretariat's Guide to ICC Arbitration, Article 35(2) does "not permit the arbitral tribunal to review the substance of its reasoning or deal with additional claims or arguments."[28] Article 35(2) "is not to be used to require the tribunal to explain, or to reformulate, its reasons. It does not provide an occasion for the reconsideration of the tribunal's decisions".[29]

24.  With these considerations in mind, the Tribunal will now analyze the Application.

**V.   ANALYSIS**

25.  In the Final Award the Tribunal applied an 18% discount rate in order to bring the Projects' future cash flows back to present value.[30] To implement its decision, the Tribunal set the AUVM's "Discount Rate" to "Custom" with an "18%" rate.[31] Because of this, it is common ground between the Parties that the AUVM presented an automatic calculation error in relation to the PPDR of USD 7,935,448.06.[32] The Tribunal shall therefore correct this undisputed calculation error and reduce the amount granted in the Final Award accordingly.

26.  Regarding the WDO toggle, the issue is similarly straightforward. Indeed, paragraphs 1119 and 1120 of the Final Award are clear in that "the Respondents' calculation of depreciation should be accepted", and that it was "appropriate to adopt the Respondents' working capital estimates".[33] In view of this, the determination in paragraph 1128(viii)(e) of the Final Award setting the WDO toggle to "Abdala" is inconsistent with the Tribunal's own reasoning. Notably, the Claimants do not dispute this inconsistency.[34]

27.  Being of a computational and/or clerical nature, such an error is "of the kind referred to in Article 35(1)" of the ICC Rules.[35] Hence, it requires correction. The Final Award should have, as was indeed the Tribunal's intention, set the WDO toggle to "B&F", not to "Abdala". This is even more so considering that paragraph 1128 of the Final Award: (i) is part of a section that, seeking to explain the implementation of the Tribunal's findings on quantum, contains no substantive or analytical reasoning; and

---

[28] Fry, Greenberg and Mazza, 'The Secretariat's Guide to ICC Arbitration' (2012), § 3-1265.
[29] Webster and Bühler, 'Handbook of ICC Arbitration' (2014), § 35-16.
[30] Final Award, § 1084.
[31] Final Award, § 1128(vii).
[32] *Supra*, §§ 10, 16.
[33] Final Award, §§ 1119, 1120.
[34] *Supra*, fn. 22.
[35] *Supra*, § 21.

(ii) itself refers to paragraphs 1119 and 1120 of the Final Award.[36] The Tribunal shall therefore reduce the amount granted in the Final Award accordingly.

28. In sum, the Tribunal will correct the Final Award: (i) by setting the WDO toggle to "B&F";[37] and (ii) by accounting for the PPDR as is common ground between the Parties.[38] In doing so, the Tribunal notes that, "due to interaction effects",[39] the combined impact of these corrections is greater than their simple sum.

29. The Tribunal reaches its conclusion irrespective of the Claimants' submissions on the element of Other Revenues & Costs. Indeed, as explained further below, the Tribunal deems the Claimants' arguments to be inadmissible.

30. The Claimants allege being "unable to say whether the Tribunal's intention was to maintain the [WDO] toggle […] as to all three elements [(i.e., Working Capital, Depreciation and Other Revenues & Costs)] or not".[40] In particular, the Claimants contend that, as the Final Award did not touch upon Other Revenues & Costs as an independent input within the WDO toggle (as was done with Working Capital and Depreciation and as allowed by the AUVM), the Tribunal does not seem to have departed from its alleged "default position" to favor the AUVM's "Abdala" setting in that respect.[41]

31. For the Tribunal, the Claimants' arguments on Other Revenues & Costs exceed the scope of the Application. They hinge on the Tribunal's alleged substantive "default position" in terms of quantum, and/or on what the Claimants deem to be an issue not developed in the Final Award. None of these arguments characterize a clerical, computational, typographical or a similar issue in accordance with Articles 35(1) and 35(2) of the ICC Rules.

32. To the contrary, addressing the issues put forward by the Claimants could impermissibly prompt the Tribunal to review its reasoning and provide explanations as to its substantive findings. The Tribunal recalls that this would be inappoite in the context of an application pursuant to Article 35(2) of the ICC Rules, as is the case here.[42] The Tribunal has therefore dismissed the Claimants' arguments on that

---

[36] Final Award, fn. 1795.
[37] *Supra*, § 26- 27.
[38] *Supra*, § 25
[39] *Supra*, fn. 15, 27.
[40] Answer, § 6.
[41] *Supra*, §§ 17-18.
[42] *Supra*, § 23.

13

basis. As such, they have not been considered by the Tribunal in reaching its conclusion on correction of the Final Award.

33. However, merely for the sake of completeness, the Tribunal will briefly deal with the Claimants' submissions on Other Revenues & Costs.

34. First, contrary to the Claimants' position, the Tribunal's characterization of the AUVM as the "most appropriate valuation model for the Tribunal to establish the indemnity owed to the Claimants under the DA provisions"[43] by no means implied establishing a "default position" in favor of the AUVM's "Abdala" settings.[44] As rightly pointed out by the Respondents, the reasons behind the Tribunal's decision to favor the AUVM over the Brailovsky/Flores 2016 Valuation Model are "set forth in paragraph 582" of the Final Award,[45] and none of them pertain to the AUVM's substantive default correctness.

35. The Tribunal toggled the various AUVM inputs in light of the Parties' corresponding arguments per quantum issues in dispute. There was no default position. Otherwise the Tribunal would not have "edited the AUVM's underlying data in order to adequately reflect its findings",[46] as it did in relation to various AUVM inputs.[47]

36. Second, even if the Final Award does not expressly mention the Other Revenues & Costs element in paragraphs 1112 to 1120, this does not mean that this issue was left undecided. The Other Revenues & Costs element was comprised of: "(i) all sales of blended products from the damages calculation; (ii) the Ameriven fee that Dr. Abdala includes as a source of additional revenue to Claimants in the Willful Breach scenario for the Hamaca Project; (iii) revenues related to solids handling, port fees and interest in respect of the Petrozuata Project; and (iv) "Other Expense: Off-Take," "Deferred Income Amortization," and "Capital Payment (OTA)," from the cash flow calculation for the Petrozuata Project".[48] Nevertheless, as acknowledged by the Claimants, all sales of blended products (and the associated revenues) were "removed from the damages calculation by virtue of the Tribunal selecting the Respondents' production inputs".[49] The same applies to the Ameriven fee, as the

---

[43] Final Award, § 585.
[44] *Supra*, §§ 17-18.
[45] Reply, § 1.
[46] Final Award, fn. 889.
[47] Final Award, § 1128(i)(b), 1128(iii).
[48] C-PHB, Appendix F, § 38(b).
[49] Answer, fn. 2.

Tribunal denied the Claimants' Willful Breach Claim in its entirety.[50] It follows that, in light of the Tribunal's determinations, the Other Revenues & Costs element was narrowed down to "items (iii) and (iv) above".[51]

37. Having already decided on Working Capital, Depreciation, blended products, and the Ameriven fee, however, the Tribunal deemed it unnecessary to elaborate on items (iii) and (iv) which, in any event, were not sufficiently addressed (if at all) in either of the Claimants' submissions. In the circumstances, the Tribunal considered that, in the aggregate, its findings sufficiently disposed of the WDO in favor of the Respondents.

## VI. OPERATIVE PART

38. For the reasons set out above, the Tribunal renders the following Addendum to the Final Award, which shall form integral part of the Final Award:

   i. Paragraph 1128(viii)(e) of the Final Award is amended as follows:

      *"WK, Depreciation, Other Revenues & Costs": This toggle has been set to "B&F".*

   ii. The first sentence of paragraph 1129 of the Final Award is amended as follows:

      *In light of the above, the Tribunal finds that the Respondents' indemnity obligation pursuant to the DA provisions of the AAs amounts to: (i) USD 421.661,382.09, under the Petrozuata AA; and (ii) USD 1,465,926,366.97, under the Hamaca AA. As such, the total compensation owed to the Claimants as a result of the Income Tax Increase and the Expropriation amounts to USD 1,887,587,749.06.*

   iii. The amount of compensation relating to the Petrozuata Project in paragraphs 1163(iv) and (v) of the Final Award is corrected to USD 421,661,382.09.

   iv. The amount of compensation relating to the Hamaca Project in paragraphs 1163(vi) and (vii) of the Final Award is corrected to USD 1,465,926,366.97.

   v. The total amount of compensation set forth in paragraph 1163(viii) of the Final Award is corrected to USD 1,887,587,749.06.

   vi. All other applications and/or requests for relief are dismissed.

---

[50] Answer, fn. 2.
[51] Answer, fn. 2.

15

**Place of the arbitration:** New York City, New York (U.S.A.)

**Date:** 19.07.2018

_____  
Prof. Laurent Aynès  
Co-arbitrator

_____  
Prof. Andrea Giardina  
Co-arbitrator

_____  
Dr. Laurent Lévy  
President