# **Exhibit B**

Execution Version

# SETTLEMENT AGREEMENT

among

**Petróleos de Venezuela, S.A.**

**PDVSA Petróleo, S.A.**

**Corpoguanipa, S.A.**

(hereinafter together referred to as the "PDVSA Parties")

and

**ConocoPhillips Petrozuata B.V.** and

**Phillips Petroleum Company Venezuela Limited**

(hereinafter together referred to as "ConocoPhillips")





REDACTED

**8.0    Suspension of Actions.**

Immediately after the PDVSA Parties execute and deliver the Bonaire Deed of Transfer, the St. Eustatius Deed of Transfer and the Escrow Instructions pursuant to Article 3.1, and the Consents pursuant to Article 6.0 of this Agreement, ConocoPhillips: (i) shall release the existing Dutch Caribbean Attachments and refrain from seeking leave to serve or serving any further Dutch Caribbean Attachments; (ii) shall refrain from seizing or executing on assets to satisfy or enforce any of the judgments entered by consent pursuant to Article 6.0; and (iii) with the exception of the Excluded Actions as defined below in Article 10.0 and except for any proceedings to enforce this Agreement as may be brought under the terms of this Agreement, shall refrain from bringing, and shall suspend, withdraw, dismiss without prejudice or stay (as applicable to the proceedings), all



Execution Version

legal proceedings, attachments or other measures to enforce the ICC Award or that are dependent on the status of ConocoPhillips as a creditor of the PDVSA Parties by virtue of the ICC Award, including, without limitation, the existing proceedings and measures referred to in the list appended to this Agreement as Exhibit 17, so long as no Event of Payment Default under this Agreement has occurred.

Notwithstanding the provisions of Article 10.0 below, so long as no Event of Payment Default under this Agreement has occurred, ConocoPhillips shall cause the ICSID Claimants to refrain from seeking any conservatory attachments, attachment orders or executions on or in aid of enforcement of an award rendered against Venezuela in the ICSID Arbitration (an "ICSID Award"), or on or in aid of any judgment of any court recognizing, confirming or enforcing an ICSID Award, against the assets of the PDVSA Parties situated on the islands of Aruba, Bonaire, Curaçao, St. Eustatius, Saba or in the Dutch part of St. Maarten, or on the territorial waters surrounding those islands (the "Dutch Caribbean").

Except as provided above, nothing in this Agreement shall prohibit or restrict the ICSID Claimants' ability to seek recognition of an ICSID Award or enforce an ICSID Award.

Nothing in this Agreement shall limit, restrict, or affect in any way, or be construed as a waiver of, any defenses the PDVSA Parties have or may have to the enforcement of an ICSID Award or any other debt of Venezuela against the PDVSA Parties or their respective assets.



13



**14.0    Governing Law.**

This Agreement shall be governed by and construed in accordance with the laws of the State of New York applicable to contracts entered into and fully to be performed in New York. Conflict of laws rules that would require the application of the law of any other jurisdiction shall not apply.

**15.0    Dispute Resolution.**

Any controversy or claim arising out of or relating to this Agreement, or the validity or breach thereof, shall be exclusively brought before and resolved by either the U.S. District Court for the Southern District of New York or the Supreme Court for the State of New York, New York County, and the Parties irrevocably consent to the jurisdiction of those courts to adjudicate any such disputes. The provision does not apply to the exercise by ConocoPhillips of its right to Extra-Contractual Judgment Enforcement.



REDACTED

## 25.0   Compliance.

The Parties represent that this Agreement has been executed obeying the laws, treaties, regulations and applicable government provisions, including those of Venezuela and the United States of America and their respective anti-corruption regulations (collectively, "Applicable Laws"). Likewise, the Parties confirm that such Applicable Laws will be abided in the performance of the obligations of this Agreement. Specifically, each Party represents and warrants to the other Parties that upon signing this Agreement, no such Party, or to its knowledge, any of

its Affiliates, shareholders or personnel, has made or will make, an offer, payment, promise to pay, or authorization to give anything of value, either directly or indirectly, for the use or benefit of: (a) any Foreign Official, or (b) any other person having knowledge that all or any portion of the paid amount or promised amount to such a person will be offered, given or promised to a Foreign Official, for the purpose of influencing any official action, decision, or inaction, or Government decision or any agency thereof, to obtain, retain or direct business or otherwise secure an improper advantage. "Foreign Official" means: (1) an officer or employee of any government or any department, agency, or dependency thereof; (2) an officer or employee of an international public organization; (3) any person acting in an official capacity for or on behalf of such government, department, agency, or unit, or for or on behalf of such international public organization; (4) any political party, political party official or candidate for public office of the same; or (5) an officer, employee, representative or agent of any entity owned or controlled directly or indirectly by a government, including but not limited to sovereign wealth trust funds. In addition, a party has "knowledge" if it knows, or has a high probability of knowing, or has a great certainty that a specific event has occurred or is substantially certain that it will occur. Finally, none of the Parties is obliged to take or not take any action if such Party considers, at its sole option and discretion, that performing such action or not will lead to, cause or facilitate the violation of any Applicable Law.



22