**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| PHILLIPS PETROLEUM COMPANY VENEZUELA LIMITED and CONOCOPHILLIPS PETROZUATA B.V., Plaintiffs, v. PETRÓLEOS DE VENEZUELA, S.A., CORPOGUANIPA, S.A., and PDVSA PETRÓLEO, S.A., Defendants. | C.A. No. 19-mc-00342-LPS |

**EXHIBIT A TO OCTOBER 6, 2020
LETTER TO THE HONORABLE LEONARD P. STARK**

**PUBLIC VERSION**

*Of Counsel*:

Michael S. Kim
Marcus J. Green
KOBRE & KIM LLP
800 Third Avenue
New York, New York 10022
(212) 488-1200
michael.kim@kobrekim.com
marcus.green@kobrekim.com

October 20, 2020

ROSS ARONSTAM & MORITZ LLP

Garrett B. Moritz (Bar No. 5646)
Anne M. Steadman (Bar No. 6221)
100 S. West Street, Suite 400
Wilmington, Delaware 19801
(302) 576-1600
gmoritz@ramllp.com
asteadman@ramllp.com

*Attorneys for Phillips Petroleum Company Venezuela Limited and ConocoPhillips Petrozuata B.V.*

Execution Version

# SETTLEMENT AGREEMENT

among

**Petróleos de Venezuela, S.A.**

**PDVSA Petróleo, S.A.**

**Corpoguanipa, S.A.**

(hereinafter together referred to as the "PDVSA Parties")

and

**ConocoPhillips Petrozuata B.V.** and

**Phillips Petroleum Company Venezuela Limited**

(hereinafter together referred to as "ConocoPhillips")

Execution Version

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made on the Effective Date between ConocoPhillips Petrozuata B.V. ("ConocoPetrozuata") and Phillips Petroleum Company Venezuela Limited (together, "ConocoPhillips") and Petróleos de Venezuela, S.A. ("PDVSA"), PDVSA Petróleo, S.A. ("PPSA") and Corpoguanipa, S.A. (together, the "PDVSA Parties"). ConocoPhillips and the PDVSA Parties are sometimes referred to herein individually as a "Party" and collectively as the "Parties."

**Recitals**

**WHEREAS,**

A. On April 24th, 2018, a duly constituted arbitral tribunal of the International Chamber of Commerce (the "ICC Tribunal") issued the final arbitration award in *Phillips Petroleum Company Venezuela Limited and ConocoPhillips Petrozuata B.V. v. Petróleos de Venezuela, S.A., Corpoguanipa, S.A. and PDVSA Petróleo, S.A.*, Case No. 20549/ASM/JPA (C-20550/ASM) (the "ICC Award").

B. By Addendum to the ICC Award dated July 19th, 2018, the ICC Tribunal corrected computational errors in the ICC Award and established that the amount owed to ConocoPhillips is one billion, eight hundred eighty-seven million, five hundred eighty-seven thousand, seven hundred forty-nine Dollars and six cents (USD $ 1,887,587,749.06), which, updated with (i) the fees and expenses of the Tribunal and the expenses of the Tribunal's Secretary as well as the ICC administrative expenses that the PDVSA Parties are required to reimburse to ConocoPhillips according to section (xii) of the ICC Award and (ii) the interest from April 25th, 2018 to the Effective Date, is one billion, nine hundred sixty-eight million, eight hundred fifty-four thousand nine hundred thirty-two Dollars (USD $ 1,968,854,932). That amount, plus accrued interest as provided for in this Agreement, is the "Settlement Amount."

C. The Parties have now reached a full and final settlement of all claims and issues arising out of the ICC Award as set forth herein.

D. Pursuant to License No. Venezuela-2018-353747-1 dated July 24th, 2018, ConocoPhillips received a license from the U.S. Department of Treasury's Office of 

1

Foreign Assets Control in relation to this Agreement and the performance by the Parties of their obligations under this Agreement.

**NOW THEREFORE,** in consideration of the foregoing and the mutual promises contained in this Agreement, the Parties agree to be bound by the following terms:

## 1.0   Definitions.

Capitalized terms used in this Agreement shall have the meanings as set forth above in the preamble and Recitals, as set forth below, and as otherwise defined in this Agreement.

"<u>Affiliate</u>" means any entity directly or indirectly owned or controlled by, or under common ownership or control with, any Party or non-party.  When used in connection with this definition, "control" shall mean the ownership of a majority of the equity interests and voting rights in an entity, and "controlled by" and "controlling" are used accordingly.



2

Execution Version



"Day" means calendar day.

"Dollars" and "USD $" means the lawful currency of the United States of America.

"Effective Date" is the date on which this Agreement shall become effective by the execution of a copy of this Agreement by Parties and the Parties' exchange of their signature pages with one another.

"Euros" and "EUR" means the lawful currency of the European Union.

"Exchange Rate" means the rate of exchange from Dollars to Euros for any payment made in Euros, calculated using the reference exchange rates published by the European Central Bank at 4:00 p.m. CET the day prior to payment.

"ICSID Arbitration" means the existing arbitration proceedings between the ICSID Claimants (as defined below) and the Bolivarian Republic of Venezuela ("Venezuela") before the International Centre for Settlement of Investment Disputes, ICSID Case No. ARB/07/30.

"ICSID Claimants" means ConocoPhillips Petrozuata B.V., ConocoPhillips Hamaca B.V., ConocoPhillips Gulf of Paria B.V. and ConocoPhillips Company.

3

Execution Version



## 2.0    Settlement Amount.

The PDVSA Parties shall pay ConocoPhillips the Settlement Amount in full and final satisfaction of the ICC Award as provided for herein.  The Settlement Amount includes accrued and unpaid interest since April 25, 2018 and shall further include interest at the Interest Rate and/or the Default Interest Rate, as may be applicable under this Agreement, payable until the Settlement Amount is paid in full in accordance with the terms of this Agreement.  The PDVSA Parties shall



4

Execution Version

pay the Settlement Amount by a combination of the Initial Payment pursuant to Article 3.4 below and payments made pursuant to the Installment Schedule as defined in Article 4 below.  All payments of the Settlement Amount shall be paid without set-off and net of any taxes or any other bank or financial transaction deduction or withholding which may apply to any such payment.

Within ten (10) Days after the Effective Date, the Parties shall agree on the financial institution(s) that will be used for the purpose of (1) making all payments related to the Settlement Amount under this Agreement ███████████ The obligation of each of the PDVSA Parties to pay the Settlement Amount under this Agreement is joint and several.

**3.0    Initial Payment.**

The initial payment towards satisfaction of the Settlement Amount is the equivalent of five hundred million Dollars (USD $ 500,000,000) (the "Initial Payment"), which will be paid as follows:



Execution Version

Execution Version



### 3.4 Initial Cash Payments.

The PDVSA Parties shall pay to ConocoPhillips in cash in immediately available funds denominated in either Dollars or in Euros calculated by the Exchange Rate, to bank accounts designated by ConocoPhillips, the equivalent amount of two hundred million Dollars (USD $ 200,000,000) in no more than two installments as follows:

The equivalent of one hundred million Dollars (USD $ 100,000,000) within forty-five (45) Days after the Effective Date; and

The equivalent of one hundred million Dollars (USD $ 100,000,000) within ninety (90) Days after the Effective Date.

### 4.0    Quarterly Installment Payments.

The remaining balance of the Settlement Amount, as well as (i) the interest accrued pursuant to this Agreement and (ii) any adjustment that may be required pursuant to Article 3.3 (the "Remaining Balance"), will be satisfied by the PDVSA Parties pursuant to this Article 4.0.

███████████████████████████████████████████████ the Remaining Balance will be one billion, four hundred sixty-eight million, eight hundred fifty-four thousand, nine hundred thirty-two Dollars (USD $ 1,468,854,932).

The PDVSA Parties shall make eighteen (18) quarterly installment payments (the "Quarterly Installment Payments"), beginning on or before one hundred and eighty (180) Days after the Effective Date, as shown in the schedule appended to this Agreement as Exhibit 6 (the "Installment Schedule").   The Quarterly Installment Payments shall be made in cash, in immediately available funds denominated in either Dollars or in Euros calculated by the Exchange Rate, to bank accounts designated by ConocoPhillips.

The Quarterly Installment Payments are shown on the Installment Schedule, each in the amount of eighty-eight million, five hundred fifty-three thousand, six hundred seventy-three Dollars (USD $ 88,553,673).  If any Quarterly Installment Payment Day falls in weekend or holiday Day, the PDVSA Parties shall make the respective payment in the next available business Day. The Installment Schedule reflects the Quarterly Installment Payments in Dollars calculated using the Interest Rate and the Settlement Amount before any adjustment as may be required pursuant to Article 3.3 of this Agreement, if applicable.  If the Default Interest Rate becomes applicable under this Agreement the amounts of the Quarterly Installment Payments shall be recalculated accordingly.

Execution Version



Execution Version



Execution Version



**6.0    Consent to Entry of Judgments Recognizing the ICC Award.**

The Parties consent to the recognition and confirmation of the ICC Award as a judgment of the U.S. District Court for the Southern District of New York and in the additional recognition cases brought in the several other jurisdictions that are identified on Exhibits 11-16 appended to this Agreement.  For that purpose, no later than five (5) Days after the Effective Date, the PDVSA Parties shall execute or submit before the respective Courts the irrevocable consents to recognition and letters to courts appended to this Agreement as Exhibits 11-16 (altogether, the "Consents").




11

Execution Version

The Parties hereby voluntarily and irrevocably waive their rights (i) to challenge the ICC Award or to apply for its setting-aside, vacatur or annulment, whether in the seat of the arbitration or elsewhere and (ii) to challenge or seek to vacate any judgment recognizing or confirming the ICC Award.   Notwithstanding the consents to the recognition and confirmation of the ICC Award as a judgment pursuant this Article 6.0, it is agreed and understood that, as provided in Article 8.0, neither the ICC Award nor any judgment recognizing or confirming the ICC Award may be enforced so long as no Event of Payment Default under this Agreement has occurred.

**7.0    Acceptance of Service.**

The Parties hereby each irrevocably agree to accept service of any legal process or other formal documents in relation to (i) the confirmation, recognition and/or enforcement of the ICC Award; (ii) the enforcement, recognition and/or execution of any judgment of any jurisdiction confirming, recognizing or enforcing the ICC Award; and (iii) any controversy or claim arising out of or relating to this Agreement, or the validity or breach thereof.

The PDVSA Parties each agree that such service shall be completed and perfected by transmission of such documents by commercial courier or registered mail to ▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

ConocoPhillips agrees that such service shall be completed and perfected by transmission of such documents by commercial courier or registered mail ▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓

**8.0    Suspension of Actions.**

Immediately after the PDVSA Parties execute and deliver ▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓ ConocoPhillips: (i) shall release the existing ▓▓▓▓▓ Attachments and refrain from seeking leave to serve or serving any further ▓▓ ▓▓▓ Attachments; (ii) shall refrain from seizing or executing on assets to satisfy or enforce any of the judgments entered by consent pursuant to Article 6.0; and (iii) with the exception of the ▓▓▓▓▓ and except for any proceedings to enforce this Agreement as may be brought under the terms of this Agreement, shall refrain from bringing, and shall suspend, withdraw, dismiss without prejudice or stay (as applicable to the proceedings), all

12

Execution Version

legal proceedings, attachments or other measures to enforce the ICC Award or that are dependent on the status of ConocoPhillips as a creditor of the PDVSA Parties by virtue of the ICC Award, including, without limitation, the existing proceedings and measures referred to in the list appended to this Agreement as Exhibit 17, so long as no Event of Payment Default under this Agreement has occurred.



Except as provided above, nothing in this Agreement shall prohibit or restrict the ICSID Claimants' ability to seek recognition of an ICSID Award or enforce an ICSID Award.

Nothing in this Agreement shall limit, restrict, or affect in any way, or be construed as a waiver of, any defenses the PDVSA Parties have or may have to the enforcement of an ICSID Award or any other debt of Venezuela against the PDVSA Parties or their respective assets.

**9.0     Default and Remedies.**

**9.1**     Each of the following events shall constitute both a "Payment Default" and a "Default" by the PDVSA Parties:

9.1.1   the failure of the PDVSA Parties to execute the documents to transfer title to the ███████████ pursuant to Article 3.1 of this Agreement;

9.1.2   the failure of the PDVSA Parties to execute the Consents to the entry of judgments confirming the ICC Award pursuant to Article 6.0 of this Agreement;

9.1.3   the failure of the PDVSA Parties to make the cash payments set out in Article 3.4 of this Agreement;

9.1.4   if any Quarterly Installment Payment required by Article 4.0 of this Agreement (i) is not paid by the PDVSA Parties when due 

and

9.1.5   The failure of the PDVSA Parties to pay the difference in the event that the 

established in Article 3.3 of this Agreement.

**9.2**   Each of the following events shall constitute only a "<u>Default</u>" by the PDVSA Parties:



9.2.3   if any representation or warranty made by the PDVSA Parties pursuant to this Agreement is incorrect or false; and

9.2.4   any voluntary or involuntary event of bankruptcy, insolvency filing or an appointment of a receiver, conciliator, trustee, fiscal agent liquidator or similar official for all or any substantial part of the property of PDVSA or PPSA.

**9.3**   If a Default by the PDVSA Parties occurs, ConocoPhillips shall have the right to deliver a written notice of default to the PDVSA Parties ("<u>Default Notice</u>").  If the PDVSA Parties do not remedy the Default within thirty (30) Days of the date of a Default Notice, it shall constitute an "<u>Event of Default</u>," in which case: 

9.3.1   the outstanding Settlement Amount shall accrue interest at the Default Interest Rate (instead of accruing interest at the Interest Rate as provided herein) beginning the date of the Default Notice and shall continue to do so until the date on which the Default has been remedied; and

9.3.2   ConocoPhillips shall have the right, at the sole discretion of ConocoPhillips, to take any other action to obtain remedies for the breach of this Agreement, including without limitation for declaratory relief, injunctive relief, preliminary relief, damages, costs and/or specific performance (except for the remedies set forth in Article 9.4 below, which shall only apply in case of an Event of Payment Default, as defined below).

9.4   In addition to the remedies described in Article 9.3 above, if a Payment Default by the PDVSA Parties occurs, ConocoPhillips shall have the right to deliver a Default Notice, and if the PDVSA Parties do not remedy the Payment Default within thirty (30) Days of the date of a Default Notice, it shall constitute an "Event of Payment Default," in which case:

9.4.1   the entire unpaid outstanding Settlement Amount shall become immediately due and owing under this Agreement and shall accrue interest at the Default Interest Rate (instead of accruing interest at the Interest Rate as provided for herein) until satisfied in full; and

9.4.2   the obligations agreed and given by ConocoPhillips by and under Article 8.0 of this Agreement shall be cancelled, and ConocoPhillips shall have the right, at the sole discretion of ConocoPhillips, to unilaterally take any and all actions to enforce the ICC Award or any judgment recognizing, confirming or enforcing the ICC Award, up to the full amount of any such judgment, reduced only by the actual portion of the Settlement Amount received by ConocoPhillips prior to the Event of Payment Default ("Extra-Contractual Judgment Enforcement").

9.5   The breach of any of the obligations agreed and given by ConocoPhillips by and under Article 8.0 of this Agreement, unless permitted by Article 9.4 of this Agreement, shall constitute a material breach of this Agreement by ConocoPhillips (a "Material Breach")

Execution Version

9.5.1 If any Material Breach by ConocoPhillips occurs, the PDVSA Parties shall have the right to deliver a written notice of breach to ConocoPhillips ("Breach Notice").

9.5.2 If ConocoPhillips does not remedy a Material Breach within thirty (30) Days of the date of a Breach Notice, the PDVSA Parties shall have the right, at the sole discretion of the PDVSA Parties, to either (i) take any action to obtain remedies for the breach of this Agreement, including without limitation for declaratory relief, injunctive relief, preliminary relief, damages, costs and/or specific performance, or (ii) deliver a written notice of termination to ConocoPhillips. In any case of termination of this Agreement under this Article 9.5, the termination notice shall have immediate effect, and all obligations of the Parties under this Agreement thereafter shall terminate, █████████████████████████████ ██████████████████████████████████████ ████████ For the avoidance of doubt, the acceptance of service, consents to recognition and waivers of sovereign immunity irrevocably given by this Agreement shall survive the termination of this Agreement.



16

**11.0    Termination upon Satisfaction**.

Immediately after the PDVSA Parties have fulfilled all of their obligations under this Agreement and ConocoPhillips has received payment of the entire Settlement Amount including interest accrued pursuant to this Agreement:

11.1    the Parties shall declare that the obligations and liabilities that arose from the ICC Award are discharged and released and that any judgment recognizing, confirming or enforcing the ICC Award is satisfied;

11.2    the Parties, and any applicable Affiliate, shall mutually, fully, irrevocably and unconditionally agree to waive/renounce and release, to the fullest extent permitted, (including with respect to any person within the Parties), all claims that have arisen or that may arise, in any forum, in relation to the ICC Award and its enforcement only, either at present or in the future, against any person acting by the Parties and/or their Affiliates, to the greatest extent permitted by law;

11.3    ConocoPhillips shall withdraw with prejudice any action or proceeding to enforce the ICC Award;



**12.0    Representations and Warranties**.

The Parties represent and warrant to each other, as of the Effective Date, that:

12.1    The Parties have the full right, power and authority, and have taken all action necessary to execute and deliver this Agreement, and to perform the obligations hereunder. This Agreement has been duly authorized, executed and delivered by the Parties and constitutes legal, valid and binding obligations, enforceable against the Parties in accordance with its terms;

17

12.2    The Parties have had this Agreement reviewed by competent counsel and have received advice regarding the execution and delivery of this Agreement and the performance of the obligations under this Agreement; and

12.3    Other than the explicit representations detailed in this Agreement, the Parties have not relied on any other representations, oral or written, that may have been communicated prior to the execution of this Agreement.

## 13.0   Confidentiality.

13.1    The terms of this Agreement and the negotiations that preceded it are strictly confidential and shall not be disclosed to third parties without the express prior written consent of the other Parties, except: (i) to the auditors and legal, financial and tax advisers, consultants and banks of the Parties, provided that the information is revealed under confidentiality obligations imposed on any such parties; (ii) to the Parties' Affiliates, and their respective auditors, legal, financial and tax advisers, consultants and bank, on terms which preserve confidentiality; (iii) in the event that its disclosure be required by law or pursuant to (or in response to) an order of a court or tribunal of competent jurisdiction, or pursuant to (or in response to) any order, demand or request made by any competent authority or body (including, without limitation, any stock exchange or self-regulatory body); and (iv) that its disclosure be deemed necessary by the disclosing party to implement, enforce or obtain the benefit of the bargain accruing from any of the terms of this Agreement, and/or the transactions or matters contemplated in this Agreement;



13.3   In addition to any other available remedies, the fulfillment of this confidentiality obligation may be ordered or its breach prevented through any preliminary and/or injunctive measure ordered by any competent court having jurisdiction.

## 14.0   Governing Law.

This Agreement shall be governed by and construed in accordance with the laws of the State of New York applicable to contracts entered into and fully to be performed in New York. Conflict of laws rules that would require the application of the law of any other jurisdiction shall not apply.

## 15.0   Dispute Resolution.

Any controversy or claim arising out of or relating to this Agreement, or the validity or breach thereof, shall be exclusively brought before and resolved by either the U.S. District Court for the Southern District of New York or the Supreme Court for the State of New York, New York County, and the Parties irrevocably consent to the jurisdiction of those courts to adjudicate any such disputes. The provision does not apply to the exercise by ConocoPhillips of its right to Extra-Contractual Judgment Enforcement.

## 16.0   Waivers of Sovereign Immunity.

16.1   To the fullest extent permitted by law, and to the extent that the PDVSA Parties have or may hereinafter acquire any immunity from the jurisdiction of any court in any action or proceeding (including the jurisdiction to order pre-judgment relief) that in any way arises from or relates to this Agreement or the exercise by ConocoPhillips of Extra-Contractual Judgment Enforcement of the ICC Award, the PDVSA Parties hereby irrevocably agree not to use such immunity as a defense and irrevocably waive such a defense.

16.2   The PDVSA Parties irrevocably waive any privilege or procedure for service of process that is inconsistent with Article 7.0 of this Agreement.

Execution Version

16.3    The PDVSA Parties irrevocably waive any immunity from arrest, attachment or execution on their assets in relation to (i) the enforcement of any judgment resolving any action or proceeding arising out of or relating to this Agreement and (ii) the exercise by ConocoPhillips of Extra-Contractual Judgment Enforcement of the ICC Award.

**17.0    Notices.**

All notices given under this Agreement shall be in writing transmitted by commercial courier or registered mail, with electronic copies by electronic mail to the respective Party's designees as set forth below:

If to the PDVSA Parties, to:    ████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████

If to ConocoPhillips, to:    ████████████████████████

████████████████████████████████████

A notice shall be considered to have been received on the first business day after it is sent by overnight courier for next business day delivery and on the day it is transmitted by electronic mail.

**18.0    Interpretation.**

This Agreement shall be construed as a whole according to its fair meaning. The headings used in this Agreement are for reference only and shall not affect the construction of the Agreement. No rule of construction shall apply against any Party or in favor of any Party. This Agreement shall be construed as if the Parties jointly prepared this Agreement, and any uncertainty or ambiguity shall not be interpreted against any one Party and in favor of the other.

**19.0    Entire Agreement.**

This Agreement shall constitute the entire agreement between the Parties, and shall supersede all prior agreements, understandings and negotiations between the Parties with respect to the subject matter hereof.

20

Execution Version

**20.0    Assignment.**

This Agreement shall inure to the benefit of, and shall be binding upon, the Parties hereto and their respective successors, assigns, and legal representatives. Neither this Agreement, nor any rights, interests, obligations and duties arising hereunder, may be assigned or otherwise conveyed by any Party without the express consent in writing of the other Parties.

**21.0    Amendment; No Waiver.**

This Agreement may not be amended, and no term or provision of this Agreement may be waived, except in writing signed by duly authorized representatives of the Parties. No delay on the part of a Party in exercising any right, power or remedy under this Agreement shall operate as a waiver thereof, and no single or partial exercise of any right, power or remedy by a Party shall preclude any further exercise thereof.

**22.0    Counterparts.**

This Agreement may be executed in counterparts, each of which shall be deemed an original but all of which shall constitute one and the same instrument.  This Agreement may be delivered by any Party by electronic means and any copy so delivered shall be deemed to be an original.

**23.0    Severability.**

If any provision of this Agreement, or the application thereof, is or becomes invalid or unenforceable, the remaining provisions will not be affected, and each remaining provision shall remain valid and be enforceable to the full extent permitted by applicable law.

**24.0    Cooperation.**

Each Party will promptly execute all documents and do all things that another Party from time to time reasonably requires to perfect or complete the provisions of this Agreement.

**25.0    Compliance.**

The Parties represent that this Agreement has been executed obeying the laws, treaties, regulations and applicable government provisions, including those of Venezuela and the United States of America and their respective anti-corruption regulations (collectively, "Applicable Laws").   Likewise, the Parties confirm that such Applicable Laws will be abided in the performance of the obligations of this Agreement. Specifically, each Party represents and warrants to the other Parties that upon signing this Agreement, no such Party, or to its knowledge, any of

21

Execution Version

its Affiliates, shareholders or personnel, has made or will make, an offer, payment, promise to pay, or authorization to give anything of value, either directly or indirectly, for the use or benefit of: (a) any Foreign Official, or (b) any other person having knowledge that all or any portion of the paid amount or promised amount to such a person will be offered, given or promised to a Foreign Official, for the purpose of influencing any official action, decision, or inaction, or Government decision or any agency thereof, to obtain, retain or direct business or otherwise secure an improper advantage. "Foreign Official" means: (1) an officer or employee of any government or any department, agency, or dependency thereof; (2) an officer or employee of an international public organization; (3) any person acting in an official capacity for or on behalf of such government, department, agency, or unit, or for or on behalf of such international public organization; (4) any political party, political party official or candidate for public office of the same; or (5) an officer, employee, representative or agent of any entity owned or controlled directly or indirectly by a government, including but not limited to sovereign wealth trust funds. In addition, a party has "knowledge" if it knows, or has a high probability of knowing, or has a great certainty that a specific event has occurred or is substantially certain that it will occur. Finally, none of the Parties is obliged to take or not take any action if such Party considers, at its sole option and discretion, that performing such action or not will lead to, cause or facilitate the violation of any Applicable Law.

**26.0   Language**.

This Agreement is executed in both English and Spanish. The Parties acknowledge and agree that this Agreement has been negotiated and originally drafted in English. In the event of any discrepancies between the Spanish and English versions of this Agreement, the English version shall prevail.

**27.0   Costs**.

The Parties shall bear their own costs and expenses, including legal costs, relating to the negotiation, execution and later performance of this Agreement, except as otherwise provided pursuant to Article 3.3 of this Agreement.

**IN WITNESS WHEREOF**, the Parties hereto have caused this Agreement to be duly executed and delivered as of the Effective Date.

[**signature page(s) follow**]

22

For ConocoPhillips Petrozuata B.V. and Phillips Petroleum Company Venezuela Limited:

By:
Name & Title:
Date:                    August 18th, 2018

For Petróleos de Venezuela, S.A., PDVSA Petróleo, S.A. and Corpoguanipa, S.A.:

By:
Name & Title:
Date:            18/8/2018

23