## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PHILLIPS PETROLEUM COMPANY VENEZUELA LIMITED and CONOCOPHILLIPS PETROZUATA B.V., | : : : : | |
| Plaintiffs, | : : | |
| v. | : : | C.A. No. 19-mc-00342-LPS |
| PETRÓLEOS DE VENEZUELA, S.A., CORPOGUANIPA, S.A., and PDVSA PETRÓLEO, S.A., | : : : : : | |
| Defendants. | : : | |

## DEFENDANTS' SUPPLEMENTAL MEMORANDUM OF LAW
## IN OPPOSITION TO CONOCOPHILLIPS'S ATTACHMENT MOTION

HEYMAN ENERIO GATTUSO & HIRZEL LLP
Samuel T. Hirzel, II (#4415)
300 Delaware Avenue, Suite 200
Wilmington, DE 19801
(302) 472-7300
SHirzel@hegh.law

OF COUNSEL:

Joseph D. Pizzurro (pro hac vice)
Kevin A. Meehan (pro hac vice)
CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP
101 Park Avenue
New York, NY 10178
(212) 696-6000
jpizzurro@curtis.com
kmeehan@curtis.com

*Attorney for Defendants Petróleos de*
*Venezuela, S.A., Corpoguanipa, S.A., and*
*PDVSA Petróleo, S.A.*

February 16, 2021

## TABLE OF CONTENTS

NATURE AND STAGE OF PROCEEDINGS ...............................................................1

STATEMENT OF FACTS ...........................................................................................2

        A.     The Award, the SDNY Judgment and the Settlement Agreement..............2

        B.     The Evolution of the Venezuelan Sanctions Regime ..................................2

        C.     Procedural History ......................................................................................9

ARGUMENT ..............................................................................................................11

    I.      The Attachment Motion Must Be Denied Because ConocoPhillips Lacks
          an  OFAC License Authorizing the Issuance of an Attachment of the
          PDVH Shares **................................................................................................**11

    II.     The Crystallex Decision Recognized that the OFAC Sanctions Appear to
          Prohibit the Issuance of New Writs of Attachment Against the PDVH
          Shares **..........................................................................................................**15

CONCLUSION............................................................................................................17

i

## **TABLE OF AUTHORITIES**

**Pg.**

**Cases**

*Affo v. Granite Bay Care, Inc.*,
  2013 U.S. Dist. LEXIS 76019 (D. Me. May 30, 2013) .......................................................... 13

*Arrington v. ColorTyme, Inc.*,
  972 F. Supp. 2d 733 (W.D. Pa. 2013)................................................................................... 15

*B.R.S. Land Invs. v. United States*,
  596 F.2d 353 (9th Cir. 1979) ................................................................................................ 13

*Battou v. Sec'y United States Dep't of State*,
  811 F. Appx. 729 (3d Cir. 2020) .......................................................................................... 15

*Chas. T. Main Int'l, Inc. v. Khuzestan Water & Power Auth.*,
  651 F.2d 800 (1st Cir. 1981)................................................................................................. 13

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
  No. 17-mc-151-LPS, 2021 U.S. Dist. LEXIS 7793 (D. Del. Jan. 14, 2021) ...................... 2, 16

*Dames & Moore v. Regan*,
  453 U.S. 654 (1981)............................................................................................................. 14

*Dean Witter Reynolds, Inc. v. Fernandez*,
  741 F.2d 355 (11th Cir. 1984) ............................................................................................. 12

*Grutter v. Bollinger*,
  16 F. Supp. 2d 797 (E.D. Mich. 1998).................................................................................. 15

*Kempner v. Fed. Mar. Com.*,
  313 F.2d 586 (D.C. Cir. 1963).............................................................................................. 13

*Republic of Panama v. Lexdale, Inc.*,
  804 F. Supp. 1521 (S.D. Fla. 1992) ...................................................................................... 12, 15

*Simon v. Southern R. Co.*,
  236 U.S. 115 (1915).............................................................................................................. 15

*United States v. Amirnazmi*,
  645 F.3d 564 (3d Cir. 2011) ................................................................................................. 14

**Statutes**

28 U.S.C. § 1963...................................................................................................................... 9

50 U.S.C. § 1701 ..................................................................................................................... 3

50 U.S.C. § 1702...................................................................................................................... 14

**Executive Orders & Regulations**

31 C.F.R. § 515.310 ........................................................................................... 12

31 C.F.R. § 591.201 ............................................................................................. 6

31 C.F.R. § 591.202 ......................................................................................... 7, 14

31 C.F.R. § 591.310 ..................................................................................... passim

31 C.F.R. § 591.407 ............................................................................... 7, 12, 13, 14

31 C.F.R. § 591.506 ............................................................................................. 6

Amended Venezuela Sanction Regulations,
    84 Fed. Reg. 64415, 64416 (Nov. 22, 2019) ..................................................... 6

Exec. Order No. 13692,
    80 Fed. Reg. 12747 (Mar. 8, 2015) ............................................................. 3, 4

Exec. Order No. 13808,
    82 Fed. Reg. 41155 (Aug. 24, 2017) ........................................................... 3, 4

Exec. Order No. 13827,
    83 Fed. Reg. 12469 (Mar. 19, 2018) ........................................................... 3, 4

Exec. Order No. 13835,
    83 Fed. Reg. 24001 (May 21, 2018) ............................................................ 3, 4

Exec. Order No. 13850,
    83 Fed. Reg. 55243 (Nov. 1, 2018) ....................................................... passim

**Other Authorities**

U.S. Dep't of Treasury, OFAC, Other Sanctions Programs, Venezuela Sanctions, FAQ No. 511
    (July 19, 2018), *available at*, https://home.treasury.gov/
    policy-issues/financial-sanctions/faqs/511 ..................................................... 3

U.S. Dep't of Treasury, OFAC, Other Sanctions Programs, Venezuela Sanctions, FAQ No. 808
    (Dec. 9, 2019), *available at* https://home.treasury.gov/policy-issues/financial-
    sanctions/faqs/808 ........................................................................................ 8

U.S. Dept. of Treasury, Determination Pursuant to Section 1(a)(i) of Executive Order 13850,
    dated Jan. 28, 2019 ....................................................................................... 4

Pursuant to the Court's Memorandum Order, dated January 15, 2021 [D.I. 30], and the scheduling order [D.I. 31], entered on January 29, 2021, Defendants submit this supplemental memorandum of law in opposition to ConocoPhillips's Attachment Motion, which seeks an attachment of PDVSA's shares of PDVH.[1]

## NATURE AND STAGE OF PROCEEDINGS

The parties are on common ground with respect to all of the relevant issues in this proceeding.  The parties agree that the current Venezuelan sanctions regime prohibits the attachment of PDVSA's blocked property absent a specific license from OFAC.  It is undisputed that the PDVH shares are blocked property and that ConocoPhillips does not have a specific license from OFAC authorizing the issuance of a writ of attachment of the PDVH shares. Accordingly, ConocoPhillips's Attachment Motion must be denied.

The only disputed issue before the Court is the Hail Mary argument that ConocoPhillips raised for the first time at oral argument that, while an OFAC license is required to *serve* a writ of attachment, the *issuance* of a writ of attachment does not constitute a prohibited "transfer" under the OFAC regulations.  That frivolous argument is foreclosed by the plain language of the OFAC regulations that expressly define a prohibited "transfer" to include "the **issuance**, docketing, or filing of, or levy of or under, any … **attachment**" of blocked property, such as the PDVH shares.  31 C.F.R. § 591.310 (emphasis added).  Thus, while ConocoPhillips attempts to distinguish between the issuance and service of a writ of attachment, it is a distinction without a difference.  Both the issuance and service of a writ of attachment of the PDVH shares are prohibited under the Venezuelan sanctions absent a specific OFAC license – and ConocoPhillips admits that it does not have a license to do either.

---

[1] Unless otherwise defined herein, capitalized terms shall have the meaning ascribed to them in PDVSA's opposition to the Attachment Motion.  D.I. 11.

This Court's recent decision in *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela* (*"Crystallex"*), No. 17-mc-151-LPS, 2021 U.S. Dist. LEXIS 7793, *23-24 (D. Del. Jan. 14, 2021), recognized that "the current sanctions regime does appear to block issuance of new writs of attachments on Venezuelan assets in the United States without a license."  That statement is consistent with PDVSA's position that the issuance of a writ of attachment is prohibited under the Venezuelan sanctions because ConocoPhillips admittedly lacks the requisite specific license from OFAC.  Accordingly, the Attachment Motion should be denied.

## STATEMENT OF FACTS

### A.    The Award, the SDNY Judgment and the Settlement Agreement

ConocoPhillips commenced an ICC arbitration against Defendants resulting in an Award granting ConocoPhillips compensation of $1,887,587,749.06.  Meehan Decl., Ex. A [D.I. 12]. Thereafter, ConocoPhillips commenced an action to confirm the Award in the United States District Court for the Southern District of New York.  During the pendency of the confirmation action, the parties entered into the Settlement Agreement.  PDVSA agreed to make a significant initial payment on the Award followed by a series of installment payments.  Settlement Agreement §§ 3.0, 4.0.  Pursuant to the terms of the Settlement Agreement, the parties filed a stipulation and consent to judgment in the confirmation action, which was entered by the court as the SDNY Judgment on August 23, 2018.  For its part, ConocoPhillips agreed not to take any actions to enforce the Award or the SDNY Judgment unless PDVSA defaulted on its payment obligations and did not cure its default within 30 days.  Green Decl. Ex. 6 [D.I. 4].

### B.    The Evolution of the Venezuelan Sanctions Regime

Portions of the Venezuelan sanctions program were in place before the ICC Award and SDNY Judgment were rendered in July and August of 2018.  The sanctions regime began, in March 2015, when President Barack Obama exercised his authority under the International

Emergency Economic Powers Act, 50 U.S.C. § 1701 *et seq.* ("IEEPA"), to declare a national

emergency with respect to the ongoing crisis in Venezuela.  Exec. Order No. 13692, 80 Fed.

Reg. 12747 (Mar. 8, 2015) ("E.O. 13692").  Thereafter, President Donald J. Trump exercised his

authority under IEEPA to take additional steps to address the national emergency declared in

E.O. 13692 by issuing several additional Executive Orders between August 2017 and May 2018.

*See* Exec. Order No. 13808, 82 Fed. Reg. 41155 (Aug. 24, 2017) ("E.O. 13808"); Exec. Order

No. 13827, 83 Fed. Reg. 12469 (Mar. 19, 2018) ("E.O. 13827"); Exec. Order No. 13835, 83 Fed.

Reg. 24001 (May 21, 2018) ("E.O. 13835").

 In particular, on August 24, 2017, the President issued E.O. 13808, which prohibits "[a]ll

transactions related to, provision of financing for, and dealings in … new debt with a maturity of

greater than 90 days of Petróleos de Venezuela, S.A."  E.O. 13808, § 1(a)(i).  OFAC issued

guidance explaining that the prohibition on extending "new debt" under E.O. 13808 includes any

"extensions of credit" to PDVSA.  U.S. Dep't of Treasury, OFAC, Other Sanctions Programs,

Venezuela Sanctions, FAQ No. 511 (July 19, 2018), *available at*, https://home.treasury.gov/

policy-issues/financial-sanctions/faqs/511.  Thus, E.O. 13808 prohibits parties from entering into

agreements that provide PDVSA with payment terms extending beyond 90 days absent an OFAC

license.

 ConocoPhillips could not execute the Settlement Agreement without an OFAC license

because that Agreement provided PDVSA with a payment schedule in excess of the 90-day limit

imposed by E.O. 13808.  ConocoPhillips therefore applied for a license to enter into the

Settlement Agreement on May 27, 2018.  D.I. 14-1 at p. 1.

 On July 24, 2018, OFAC issued License No. VENEZUELA-2018-353747-1 (the

"License") to ConocoPhillips, which stated that ConocoPhillips was "authorized to engage in all

transactions necessary and ordinarily incident to entering into and executing a settlement

agreement described in correspondence dated July 19, 2018."  License, § I [D.I. 14-1].  While the

License permits ConocoPhillips to execute and receive payments under the Settlement

Agreement – transactions that would have otherwise been prohibited under E.O. 13808, it

contains several caveats and limitations.

 For instance, the License explicitly states:  "This License **does not authorize** the transfer

of any blocked property, the debiting of any blocked account, **the entry of any judgment or**

**order that effects a transfer of blocked property, or the execution of any judgment against**

**property blocked** pursuant to any Executive order or Chapter V of Title 31 of the C.F.R."  *Id.*

§ II(a) (emphasis added).  OFAC further stated that the License did not authorize any

transactions prohibited under any law or regulation other than Executive Orders 13692, 13808,

13827 and 13835.  D.I. 14-1 at p. 1.  OFAC also reserved the right to revoke or modify the

License at any time.  *Id.*  The License was set to expire on July 31, 2020.  *Id.*

 On August 18, 2018, shortly after receiving the License, ConocoPhillips executed the

Settlement Agreement and thereafter received a substantial initial payment under the terms of the

Agreement.  However, the Venezuelan sanctions regime continued to evolve.

 On November 1, 2018, the President once again exercised his authority under IEEPA and

issued Executive Order 13850, which blocked the assets of any individual or entity designated by

the U.S. Treasury Secretary as a Specially Designated National ("SDN").  Exec. Order No.

13850, 83 Fed. Reg. 55243 (Nov. 1, 2018).  On January 28, 2019, the Treasury Secretary

designated PDVSA as a SDN under E.O. 13850.[2]  As a result of the designation of PDVSA as an

---

[2] U.S. Dept. of Treasury, Determination Pursuant to Section 1(a)(i) of Executive Order 13850
(Jan. 28, 2019), *available at* https://home.treasury.gov/system/files/126/
vz_sector_determination_oil_20190128.pdf**.**

SDN, all of PDVSA's "property and interests in property that are in the United States, that hereafter come within the United States, or that are or hereafter come within the possession or control of any United States person" were "blocked" and cannot "be transferred, paid, exported, withdrawn or otherwise dealt in" without a specific license from OFAC.  E.O. 13850, § 1(a). Those blocking sanctions further prohibited "the receipt of any contribution or . . . funds, goods, or services" from PDVSA, without a license from OFAC.  *Id.* § 4(b).  The blocking order also broadly prohibits any transactions that evade or avoid the prohibitions of E.O. 13850 as well as any attempts or conspiracies to evade or avoid the prohibitions of E.O. 13850.  *Id.* § 5.

On February 1, 2019 – just days after PDVSA was designated as an SDN – ConocoPhillips applied to OFAC for a new license to continue receiving payments from PDVSA under the Settlement Agreement.  D.I. 14-3 at p. 1.  On April 25, 2019, OFAC issued License No. VENEZUELA-2018-353747-2 (the "Amended License") that was substantially similar to the License but accounted for the changes in the Venezuelan sanctions regime, including PDVSA's designation as a SDN under E.O. 13850.  Amended License [D.I. 14-3 at p. 2].  While the Amended License authorized ConocoPhillips to continue receiving payments from PDVSA under the Settlement Agreement, the Amended License stated that it did not otherwise permit ConocoPhillips to deal in PDVSA's blocked property and did not authorize "the entry of any judgment or order that effects a transfer of blocked property, or the execution of any judgment against property blocked" under the sanctions.  Amended License, §§ I, II(a) [D.I. 14-3].  The Amended License also explicitly stated:  "**This License does not cover activities and transactions required to enforce the International Chamber of Commerce award in the event of PDVSA's default under the Settlement Agreement, including the receipt of debt or equity owned or controlled by PDVSA**."  *Id.* § II(c).  OFAC stated that the Amended License

5

did not authorize any transactions prohibited by any law or regulation other than the Executive Orders and OFAC regulations then in existence.  D.I. 14-3 at p. 1.  OFAC also reserved the right to revoke or modify the Amended License at any time.  *Id.*  The Amended License was set to expire on July 31, 2020.  *Id.*

On November 22, 2019, OFAC significantly amended and expanded the regulations implementing the Venezuelan sanctions program.  *See* Amended Venezuela Sanction Regulations, 84 Fed. Reg. 64415, 64416 (Nov. 22, 2019).  While OFAC originally issued regulations implementing certain Venezuelan sanctions, those original regulations did not cover transactions relating to PDVSA and its property prohibited under E.O. 13850.  The November 2019 amendments expanded the scope of the OFAC regulations to cover all transactions prohibited under any and all of the executive orders issued in connection with the Venezuelan sanctions program, including E.O. 13850 – the executive order under which PDVSA was declared an SDN and its property was blocked.  *See id.* at 64416; 31 C.F.R. § 591.201.  The amendments also included an entirely new regulation, which states:

> Notwithstanding the existence of any general license issued under this part, or issued under any Executive order issued pursuant to the national emergency declared in E.O. 13692, the entry into a settlement agreement or **the enforcement of any lien, judgment, arbitral award, decree, or other order through execution, garnishment, or other judicial process** purporting to **transfer** or otherwise alter or affect property or interests in property blocked pursuant to § 591.201, as referenced in § 591.506(c),[3] **is prohibited** unless authorized pursuant to a specific license issued by OFAC pursuant to this part.

---

[3] Section 591.506(c) of the Venezuelan sanctions regulations states:

> Entry into a settlement agreement or the enforcement of any lien, judgment, arbitral award, decree, or other order through execution, garnishment, or other judicial process purporting to transfer or otherwise alter or affect property or interests in property blocked pursuant to § 591.201 is prohibited unless licensed pursuant to this part.

31 C.F.R. § 591.506(c).

31 C.F.R. § 591.407 (emphasis added).

The OFAC regulations broadly define the term "transfer" as follows:

> The term transfer means any actual or purported act or transaction, whether or not evidenced by writing, and whether or not done or performed within the United States, the purpose, intent, or effect of which is to create, surrender, release, convey, transfer, or alter, directly or indirectly, any right, remedy, power, privilege, or interest with respect to any property. Without limitation on the foregoing, **it shall include** the making, execution, or delivery of any assignment, power, conveyance, check, declaration, deed, deed of trust, power of attorney, power of appointment, bill of sale, mortgage, receipt, agreement, contract, certificate, gift, sale, affidavit, or statement; the making of any payment; the setting off of any obligation or credit; the appointment of any agent, trustee, or fiduciary; the creation or transfer of any lien; **the issuance, docketing, or filing of, or levy of or under, any judgment, decree, attachment, injunction, execution, or other judicial or administrative process or order, or the service of any garnishment**; the acquisition of any interest of any nature whatsoever by reason of a judgment or decree of any foreign country; the fulfillment of any condition; the exercise of any power of appointment, power of attorney, or other power; or the acquisition, disposition, transportation, importation, exportation, or withdrawal of any security.

31 C.F.R. § 591.310 (emphasis added).  The OFAC regulations state that any unlicensed transfer of blocked property "is null and void and shall not be the basis for the assertion or recognition of any interest in or right, remedy, power, or privilege with respect to such property or property interest."  31 C.F.R. § 591.202(a).  The regulations further state:  "**Unless licensed** pursuant to this part, **any attachment**, judgment, decree, lien, execution, garnishment, or other judicial process **is null and void** with respect to any property and interests in property blocked pursuant to § 591.201."  31 C.F.R. § 591.202(e) (emphasis added).

On December 9, 2019, OFAC issued guidance regarding the newly amended Venezuela sanctions regulations.  Among other things, the OFAC guidance states:

> [A] specific license from OFAC is required for the entry into a settlement agreement or the enforcement of any lien, judgment, or

other order through execution, garnishment, or other judicial process purporting to transfer or otherwise alter or affect property or interests in property blocked pursuant to the Venezuela Sanctions Regulations.  This includes the purported creation or perfection of any legal or equitable interests (including contingent or inchoate interests) in blocked property.  While terminology may vary in different jurisdictions and proceedings, **a specific license from OFAC would be required for measures such as**:

- Taking Possession (Actual or Constructive)
- Seizing
- Levying Upon
- **Attaching**
- Encumbering
- Pledging
- Conveying
- Selling (Final or Contingent)
- Freezing
- Assuming or Maintaining Custody
- Sequestering

U.S. Dep't of Treasury, OFAC, Other Sanctions Programs, Venezuela Sanctions, FAQ No. 808 (Dec. 9, 2019), *available at* https://home.treasury.gov/policy-issues/financial-sanctions/faqs/808 ("OFAC FAQ 808") (emphasis added).

On August 21, 2020, OFAC issued License No. VENEZUELA-2018-353747-4 (the "License Renewal") to ConocoPhillips that is identical to the Amended License and merely extends the expiration date of the license until August 22, 2022.[4]  As with ConocoPhillips's prior licenses, the License Renewal permits ConocoPhillips to continue receiving payments from PDVSA pursuant to the Settlement Agreement.  License Renewal, § I [Supp. Meehan Decl., Ex. C].  And, just like its prior licenses, the License Renewal explicitly states that it does not

---

[4] A copy of the License Renewal produced by ConocoPhillips is appended as Exhibit C to the Supplemental Declaration of Kevin A. Meehan, dated February 16, 2021 ("Supp. Meehan Decl.").

authorize ConocoPhillips to seek any order or judgment that would effect a transfer of PDVSA's property or otherwise undertake any actions to enforce the Award or the SDNY Judgment in the event that PDVSA defaults under the Settlement Agreement.  *Id.* § II(a), (c).

As explained below, ConocoPhillips admits that it does not have a license from OFAC authorizing it to enforce the Award or SDNY Judgment or to seek an attachment of the PDVH shares or any other property of PDVSA.

###    C.       Procedural History

On November 26, 2019, ConocoPhillips registered the SDNY Judgment in this Court pursuant to 28 U.S.C. § 1963.  D.I. 1.  That same day, ConocoPhillips filed the Attachment Motion seeking an attachment of PDVSA's shares of PDVH.  D.I. 2; D.I. 3.  ConocoPhillips alleged that PDVSA breached the Settlement Agreement in or around October 2019, and that the deadline for curing the default expired on November 14, 2019.  D.I. 3 at p. 5.  The Attachment Motion does not mention the Venezuelan sanctions, much less that the PDVH shares are blocked property that cannot be attached absent a specific license from OFAC.

On January 6, 2020, PDVSA filed its opposition to the Attachment Motion.  D.I. 11. PDVSA argued that ConocoPhillips was not entitled to enforce the SDNY Judgment under the terms of the parties' Settlement Agreement because PDVSA's payment obligations under that Agreement were rendered impossible by the intervening Venezuelan sanctions.  *Id.* at pp. 8-10. PDVSA also argued that the OFAC sanctions regulations explicitly and unequivocally prohibit the issuance of any attachment of the PDVH shares absent a specific license from OFAC and that ConocoPhillips did not purport to have such a license.  *Id.* at pp. 10-14.

On January 20, 2020, ConocoPhillips filed a reply brief arguing that the Venezuelan sanctions did not render PDVSA's payment obligations under the Settlement Agreement impossible to perform.  D.I. 13.  ConocoPhillips further argued that the OFAC sanctions did not

prohibit an attachment of the PDVH shares.  It asserted without any support that an attachment would not constitute an impermissible "transfer" under the OFAC regulations – despite the fact that those regulations explicitly define the term "transfer" to include "the issuance, docketing, or filing of, or levy of or under, any … attachment."  *Compare id.* at pp. 6-7 *and* 31 C.F.R. § 591.310.  In its view, an OFAC license would only be required to execute upon the PDVH shares or "otherwise take 'concrete steps in furtherance of an auction or sale' of any PDVSA property."  D.I. 13 at p. 7.

The Court held oral argument on the Attachment Motion on September 17, 2020.  D.I. 24.  During argument, ConocoPhillips finally admitted that the OFAC sanctions prohibit the attachment of PDVSA's property, including the PDVH shares, absent a specific license from OFAC.  *See id.* at 13-16.  ConocoPhillips further admitted that it did not have any such license from OFAC.  *Id.* at 17:5-21.  ConocoPhillips explained that "the OFAC licenses that we have allow us to take money from PDVSA in satisfaction of our settlement agreement. … It has nothing to do with the Fi. Fa. Writ.  We do not have a license to execute."  *Id.* at 17:11-21.  Nevertheless, ConocoPhillips put a new spin on its OFAC argument by drawing a distinction between the issuance and service of a writ of attachment.  *Id.* at 13:16-23.  While it acknowledged "that service of the writ [of attachment] on PDVH or on PDVSA itself would require a license," ConocoPhillips argued that "the mere issuance of the writ" would not violate the sanctions.  *Id.* at 14:7-10, 15:5-7.  Accordingly, ConocoPhillips clarified that its Attachment Motion is "asking the court to … issue the writ and make the subsequent service of the writ contingent upon a license, or to issue the writ and leave it to ConocoPhillips to serve it or not serve it at its own peril with respect to OFAC."  *Id.* at 13:19-23.  PDVSA argued that the OFAC regulations explicitly prohibit both the issuance and service of a writ of attachment absent a

license. *Id.* at 20:4-21:7.

On January 15, 2021, this Court issued its Memorandum Order [D.I. 30], which effectively rejected Defendants' impossibility defense and requested supplemental briefing from the parties on: (i) whether the OFAC regulations "prohibit ConocoPhillips from seeking, or prohibit this Court from ordering, the relief sought by ConocoPhillips" in the Attachment Motion; and (ii) the impact, if any, of the Court's recent decision in *Crystallex.*

On February 9, 2021, ConocoPhillips confirmed that it "does not have and is not aware of the existence of any licenses or authorizations received from OFAC to enforce any judgment or award against the shares of PDVH or any other U.S.–situated assets of PDVSA."[5]

## ARGUMENT

### I.   The Attachment Motion Must Be Denied Because ConocoPhillips Lacks an OFAC License Authorizing the Issuance of an Attachment of the PDVH Shares

The parties agree that the Venezuelan sanctions prohibit the attachment of the PDVH shares without a specific license from OFAC.  D.I. 24 at 13-16.  And ConocoPhillips admits that it does not have the requisite license from OFAC authorizing the issuance of a writ of attachment of the PDVH shares or any of PDVSA's other blocked property.  *Id.* at 17:5-21.  Accordingly, there is no genuine dispute that the Venezuelan sanctions prohibit the relief sought in the Attachment Motion and therefore ConocoPhillips's Motion must be denied.

ConocoPhillips nevertheless argued for the first time during oral argument that the OFAC regulations only require a license to serve a writ of attachment and that the "issuance" of a writ of attachment does not constitute a "transfer" requiring a license under the  OFAC regulations. ConocoPhillips is wrong.  Its argument is foreclosed by the plain language of the OFAC regulations, which explicitly define a prohibited "transfer" to include "the **issuance**, docketing,

---

[5] A copy of the email from ConocoPhillips' counsel is attached as Exhibit D to the Supplemental Meehan Declaration.

or filing **of**, or levy of or under, **any … attachment**."  31 C.F.R. § 591.310 (emphasis added).

Thus, the plain language of the OFAC regulations make clear that the "issuance" of a writ of

attachment of the PDVH shares is prohibited because ConocoPhillips admittedly lacks the

requisite specific license from OFAC.

 Because the OFAC regulations broadly prohibit any conceivable steps toward enforcing a

judgment against blocked property, such as the PDVH shares, without a license, ConocoPhillips

was required to obtain a specific license from OFAC before seeking to enforce the SDNY

judgment.  *See* 31 C.F.R. §§ 591.310, 591.407.

 The Eleventh Circuit in *Dean Witter Reynolds, Inc. v. Fernandez* construed nearly

identical language in the Cuban sanctions regulations, which prohibited "the issuance, docketing,

filing, or the levy of or under any judgment, decree, attachment, execution, or other judicial or

administrative process or order" as requiring a creditor to obtain an OFAC license before

enforcing its judgment against blocked property.  741 F.2d 355, 357 (11th Cir. 1984) (quoting 31

C.F.R. § 515.310).  While it acknowledged that a license was not required to initiate an action to

litigate substantive liability, the Eleventh Circuit held that a court could not issue an order

authorizing a plaintiff to enforce a judgment against blocked property absent a specific license

from OFAC, stating:  "Entry of judgment triggered the application of the [OFAC] Regulations

… and all subsequent proceedings to enforce the judgment must therefore be licensed."  *See id.*

at 362-63; *see also Republic of Panama v. Lexdale, Inc.*, 804 F. Supp. 1521, 1523 (S.D. Fla.

1992) (holding that, under nearly identical language in the Panama sanctions regulations, a

creditor "may not try to enforce its judgment against the assets of Panama" until "a license is

granted by OFAC").

 It bears repeating – ConocoPhillips admits that it does not have a license authorizing it to

enforce the SDNY Judgment against PDVSA's property, much less obtain a writ of attachment

of the PDVH shares.  ConocoPhillips tried to muddy the waters on this issue by asserting during

oral argument that it had apprised OFAC before registering the SDNY Judgment and filing its

Attachment Motion.  D.I. 24 at 14:2-6, 16:14-22, 17:22-18:3.  Putting aside the fact that

ConocoPhillips has not produced any such communications with OFAC,[6] the OFAC regulations

require parties to obtain a specific license from OFAC before engaging in actions that would

otherwise run afoul of the sanctions – merely notifying OFAC is not enough.  *See* 31 C.F.R.

§ 591.407.  Moreover, a party cannot rely on informal representations expressed by OFAC

representatives during the licensing application process.  *See Chas. T. Main Int'l, Inc. v.*

*Khuzestan Water & Power Auth.,* 651 F.2d 800, 807 n.8 (1st Cir. 1981).  ConocoPhillips cannot

rely on OFAC's silence as tacit approval of its actions.  *See B.R.S. Land Invs. v. United States*,

596 F.2d 353, 355 (9th Cir. 1979) ("allegation that 'tacit approval' has been given ignores the

fact that federal agencies cannot simply acquiesce by silence"); *see also Kempner v. Fed. Mar.*

*Com.*, 313 F.2d 586, 587 (D.C. Cir. 1963); *Affo v. Granite Bay Care, Inc.*, 2013 U.S. Dist.

LEXIS 76019, at *55 n.31 (D. Me. May 30, 2013).

     In any event, OFAC has not been silent on this matter.  The License, the Amended

License and the License Renewal only authorized ConocoPhillips to receive payments under the

Settlement Agreement – and the Amended License and the License Renewal expressly stated the

ConocoPhillips was **not** authorized to engage in "activities and transactions required to enforce

the International Chamber of Commerce award in the event of PDVSA's default under the

Settlement Agreement."  Amended License, § II(c) [D.I. 14-3]; License Renewal, § II(c) [Supp.

Meehan Decl., Ex. C].  The registration of the SDNY Judgment and the filing of the Attachment

---

[6] Assuming ConocoPhillips did, in fact, notify OFAC of its intention to register the SDNY Judgment and seek an attachment of the PDVH shares, it is curious that ConocoPhillips did not apprise this Court of the clearly applicable OFAC sanctions in its Attachment Motion.

Motion in this Court were clearly "activities" undertaken to "enforce" the Award as a result of PDVSA's alleged default under the Settlement Agreement. And OFAC made perfectly clear that ConocoPhillips needed a license to engage in such "activities."

In an apparent acknowledgment that issuance of the writ of attachment would violate OFAC sanctions, ConocoPhillips also argued that this Court should issue the writ to ConocoPhillips to hold without a license "at its own peril" because doing so would further "the interest of judicial economy" by eliminating the need for further litigation if and when ConocoPhillips actually receives an OFAC license. D.I. 24 at 15:2-12. However, OFAC regulations prohibit any unlicensed attachments of blocked property, such as the PDVH shares, and state that any writ of attachment of blocked property issued in the absence of a license would be "null and void" and could "not be the basis for the assertion or recognition of any interest in or right, remedy, power, or privilege with respect to such property or property interest." 31 C.F.R. §§ 591.202(a), 591.202(e), 591.310, 591.407. Thus, if this Court issued a writ of attachment to ConocoPhillips in the absence of a license, that writ would be null and void and ConocoPhillips would not be able to rely on it for any purposes. Instead, ConocoPhillips would be required to come back and seek a new writ of attachment if and when it receives a specific license from OFAC or the sanctions are lifted. Accordingly, granting the Attachment Motion before ConocoPhillips obtains the requisite OFAC license would not promote judicial economy.[7]

Moreover, this Court lacks the Constitutional authority to grant the Attachment Motion

---

[7] The nullification of judgments and attachments is expressly provided for in IEEPA, which authorizes the President, upon the declaration of a national emergency, to "nullify, void, prevent or prohibit, any acquisition . . . use, transfer . . . or dealing in, or exercising any right, power, or privilege with respect to, or transactions involving, any property in which any foreign country or a national thereof has any interest." 50 U.S.C. § 1702(a)(1)(B). The Supreme Court upheld nearly identical regulations under the Iran Sanctions program, stating that the President had the authority under IEEPA to prohibit attachments of blocked property and to retroactively nullify any such attachments. *See Dames & Moore v. Regan*, 453 U.S. 654, 673-75 (1981); *see also United States v. Amirnazmi*, 645 F.3d 564, 575 (3d Cir. 2011).

because, in light of the Venezuelan sanctions, that Motion is not ripe for adjudication.  The Third

Circuit recently held that an issue is not ripe for adjudication when it "depends on the outcome of

contingent events."  *Battou v. Sec'y United States Dep't of State*, 811 F. Appx. 729, 730-31 (3d

Cir. 2020).  Here, ConocoPhillips concedes that its Attachment Motion seeks relief that is

necessarily contingent upon future conduct by third parties, namely, the issuance of a license by

OFAC or the lifting of the sanctions by the President.  For example, the court in *Lexdale*

dismissed an action on ripeness grounds because the plaintiff sought relief with respect to the

potential enforcement of a judgment against blocked property that "will only come to pass if

third party OFAC issues a license to [the judgment creditor] or if third party President of the

United States lifts the blocking order."  804 F. Supp. at 1524.  Any order granting the

Attachment Motion would thus be an advisory opinion and a nullity.  *See Simon v. Southern R.*

*Co.*, 236 U.S. 115, 132 (1915); *see also Arrington v. ColorTyme, Inc.*, 972 F. Supp. 2d 733, 739

(W.D. Pa. 2013); *Grutter v. Bollinger*, 16 F. Supp. 2d 797, 800 (E.D. Mich. 1998).

II.     **The *Crystallex* Decision Recognized that the OFAC Sanctions Appear to**
        **Prohibit the Issuance of New Writs of Attachment Against the PDVH Shares**

        While ConocoPhillips's Attachment Motion relies heavily on this Court's decision to

issue a writ of attachment of the PDVH shares in *Crystallex* in August 2018, the Venezuelan

sanctions regime has significantly evolved since that time and the current sanctions regime is

vastly and materially different than the regime that prevailed at the time this Court issued the

writ of attachment in *Crystallex*.  Indeed, the *Crystallex* writ was issued months prior to the

President's issuance of E.O. 13850 in November 2018 and the Treasury Secretary's designation

of PDVSA as an SDN pursuant to E.O. 13850 on January 28, 2019.  The issuance of the

*Crystallex* writ also occurred more than a year prior to the November 2019 amendments to the

OFAC regulations that now prohibit "the issuance, docketing, or filing of, or levy of or under,

15

any … attachment" of property blocked under E.O. 13850 – such as the PDVH shares.  *See* 31 C.F.R. § 591.310.  Thus, the PDVH shares were not blocked property and the Venezuelan sanctions regime did not explicitly prohibit the attachment of those shares when this Court issued the writ of attachment in *Crystallex*.

The impact of these seismic changes to the Venezuelan sanctions regime were addressed for the first time in this Court's decision last month in *Crystallex*.  This Court found that, while "the modified sanctions regime does not require a retroactive change in the order granting the writ" previously issued to Crystallex, "**the current sanctions regime does appear to block issuance of new writs of attachments** on Venezuelan assets in the United States without a license."  *Crystallex,* 2021 U.S. Dist. LEXIS 7793, at *23-24 (emphasis added).  This Court's reading of the current sanctions regime is consistent with the plain language of the OFAC regulations, which prohibit "the issuance, docketing, or filing of, or levy of or under, any … attachment" of property blocked under E.O. 13850 – such as the PDVH shares.  31 C.F.R. § 591.310.  Thus, this Court's recent decision in *Crystallex* is also consistent PDVSA's position that the Venezuelan sanctions currently prohibit the issuance of a writ of attachment in this case unless and until ConocoPhillips obtains a specific license from OFAC.

16

## **CONCLUSION**

For the foregoing reasons, this Court should deny the Attachment Motion.

HEYMAN ENERIO GATTUSO & HIRZEL LLP

*/s/ Samuel T. Hirzel*

Samuel T. Hirzel, II (#4415)
300 Delaware Avenue, Suite 200
OF COUNSEL:                                Wilmington, DE 19801
                                           (302) 472-7300
Joseph D. Pizzurro (pro hac vice)          SHirzel@hegh.law
Kevin A. Meehan (pro hac vice)
CURTIS, MALLET-PREVOST,                     *Attorney for Defendants Petróleos de*
COLT & MOSLE LLP                            *Venezuela, S.A., Corpoguanipa, S.A., and*
101 Park Avenue                             *PDVSA Petróleo, S.A.*
New York, NY 10178
(212) 696-6000
jpizzurro@curtis.com
kmeehan@curtis.com


Dated: February 16, 2021

17