# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PHILLIPS PETROLEUM COMPANY VENEZUELA LIMITED and CONOCOPHILLIPS PETROZUATA B.V., <br><br> Plaintiffs, <br><br> v. <br><br> PETRÓLEOS DE VENEZUELA, S.A., CORPOGUANIPA, S.A., and PDVSA PETRÓLEO, S.A., <br><br> Defendants. | C.A. No. 19-mc-00342-LPS |

## PLAINTIFFS' OPENING SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR MOTION FOR AN ORDER AUTHORIZING THE ISSUANCE OF A WRIT OF *FIERI FACIAS*

*Of Counsel*:

Michael S. Kim
Marcus J. Green
Josef M. Klazen
KOBRE & KIM LLP
800 Third Avenue
New York, New York 10022
(212) 488-1200
michael.kim@kobrekim.com
marcus.green@kobrekim.com
jef.klazen@kobrekim.com

Dated: February 16, 2021

ROSS ARONSTAM & MORITZ LLP

Garrett B. Moritz (Bar No. 5646)
100 S. West Street, Suite 400
Wilmington, Delaware 19801
(302) 576-1600
gmoritz@ramllp.com

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

PAGE

BACKGROUND………………………………………………………………………………1

SUMMARY OF ARGUMENT..................................................................................................2

ARGUMENT................................................................................................................................3

    I.    Sanctions Do Not Prohibit Anything Unless and Until an Enforceable Lien is Created.........................................................................................................................3

    II.    A Lien or Attachment Depends on Delivery or Service of the Writ; Accordingly, Sanctions Do Not Prevent Merely Issuing the Writ………………………………….4

    III.    ConocoPhillips' Judgment Should be Added to the Share Sale in *Crystallex*……….7

CONCLUSION ........................................................................................................................8

i

## **TABLE OF AUTHORITIES**

PAGE(S)

CASES

*Crystallex Int'l Corp. v. Bolivarian Republic Of Venezuela*,
   333 F. Supp. 3d 380 (D. Del. 2018) ................................................................................. 4, 7

*Denny v. Wilmington Ice & Coal Co.*,
   128 A. 123 (1925) ..................................................................................................................5

*Flemming v. Thompson*,
   343 A.2d 599 (Del. 1975) ......................................................................................................6

*In Re J.R. Richardson Co.*,
   83 A. 1034 (Del. Super. Ct. 1912) .........................................................................................5

*In Re Stanley's Asphalt Paving, Inc.*,
   353 B.R. 63 (Del. Bankr. 2006) .............................................................................................6

*LNC Invest., Inc. v. Democratic Repub. Of Congo*,
   69 F. Supp. 2d 607 (D. Del. 1999) ........................................................................................4

*Nat'l Oil Corp. v. Libyan Sun Oil Co.*,
   733 F. Supp. 800 (D. Del. 1990) ...........................................................................................3

*PSC, Inc. v. Londergan*,
   1985 WL 189266 (Del. Super. Ct. 1985) ..................................................................... 4, 6, 7

*Short v. Landes*,
   39 A.2d 17 (Del. Super. Ct. 1944) .................................................................................... 5, 7

*Wilmington Trust Co. v. Barron*,
   470 A.2d 257 (Del. 1983) ......................................................................................................4

STATUTES

10 *Del. C.* § 5081 ................................................................................................................. 4, 5, 6

REGULATIONS

31 C.F.R. § 591.407 ......................................................................................................................3

Phillips Petroleum Company Venezuela Limited and ConocoPhillips Petrozuata B.V. (together, "ConocoPhillips"), pursuant to the Court's order of January 15, 2021 (D.I. 30, the "Order"), respectfully submit this supplemental brief in support of their motion (D.I. 2) for an order authorizing the issuance of a writ of *fieri facias* ("*fi. fa.* writ") against shares of the Delaware corporation PDV Holding, Inc. ("PDVH") owned by Petróleos de Venezuela S.A. ("PDVSA").

## BACKGROUND

On November 26, 2019, ConocoPhillips registered in this District an approximately US $2 billion judgment against PDVSA, first entered by the Southern District of New York on August 22, 2018. Also on November 26, 2019, ConocoPhillips moved in this Court for the issuance of a *fi. fa.* writ against PDVSA's shares in PDVH (D.I. 2, the "Motion"). The factual background to the judgment and the Motion is detailed in ConocoPhillips' Opening Brief. *See* D.I. 3.

Briefing on the Motion was concluded on January 20, 2020 (D.I. 13), argument heard on September 17, 2020, and pursuant to an agreed order entered on October 1, 2020 (D.I. 26), the parties submitted a copy of a certain settlement agreement between the parties. *See* D.I. 29. By the January 15, 2021 Order, the Court rejected PDVSA's argument about the settlement agreement (*see* D.I. 30, ¶ 1) and requested supplemental briefing on: "(a) the impact, if any, of the Court's January 14, 2021 decision in the *Crystallex Asset Proceeding*, [D.I. 234 in] Misc. No. 17-151-LPS [the "*Crystallex* Decision"]; [and] (b) whether current U.S. sanctions prohibit ConocoPhillips from seeking, or prohibit this Court from ordering, the relief sought by ConocoPhillips (which shall include consideration of the license documents from the Office of Foreign Assets Control ('OFAC') that ConocoPhillips has now provided to [PDVSA])."[1] *See* D.I. 30, ¶ 2(a)-2(b).

---

[1] The parties have resolved PDVSA's request for the production by ConocoPhillips of certain OFAC communications, obviating the need for further briefing on that issue. *See* D.I. 30, ¶ 2(c).

The Court is aware ConocoPhillips has specific authorization from OFAC to accept performance by PDVSA of its obligations under the above-referenced settlement agreement (and ConocoPhillips has supplied copies of those licenses to PDVSA). ConocoPhillips does not currently hold an OFAC license authorizing execution against the PDVH shares. ConocoPhillips has requested authorization from OFAC to serve (or cause the U.S. Marshals to serve) any *fi. fa.* writ issued by order of this Court. That request is pending.

## SUMMARY OF ARGUMENT

1. The sanctions regulations are implicated only when a new right or an encumbrance as to blocked property is created, as through a levy, attachment, seizure or lien *in rem*.

2. Under Delaware law, neither an order of this Court directing the Clerk of the Court to issue a *fi. fa.* writ against the PDVH shares, nor the issuance of the writ by the Clerk, has any property law consequences. As a result, OFAC regulations do not prohibit ConocoPhillips from seeking the *fi. fa.* writ, nor the Court from authorizing one, nor the Clerk from issuing one in favor of ConocoPhillips.

3. ConocoPhillips is entitled to every benefit available under Delaware law that is not prohibited by sanctions regulations. To that end, and in light of the progress towards the PDVH share sale already underway in *Crystallex*, the Court should: (a) order the issuance of a *fi. fa.* writ against the PDVH shares in favor of ConocoPhillips; and (b) add (or direct the special master to add) ConocoPhillips' judgment to the sale process in *Crystallex*, so that, in its design, the process contemplates the sale of as many shares as necessary to satisfy the Crystallex judgment *and the ConocoPhillips judgment*. *See* D.I. 234 in Misc. No. 17-151-LPS, at 36.

**ARGUMENT**

**I.     Sanctions Do Not Prohibit Anything Unless and Until an Enforceable Lien is Created**

The OFAC regulations prohibit, without a license, "the enforcement of any lien, judgment, arbitral award, decree, or other order through execution, garnishment, or other judicial process *purporting to transfer or otherwise alter or affect property or interests in [blocked] property*." 31 C.F.R. § 591.407 (emphasis added).  In non-binding guidance the agency further explains:

> "[t]his includes the purported creation or perfection of any legal or equitable interests (including contingent or inchoate interests) in blocked property. While terminology may vary in different jurisdictions and proceedings, a specific license from OFAC would be required for measures such as: - Taking Possession (Actual or Constructive) – Seizing - Levying Upon – Attaching – Encumbering – Pledging – Conveying - Selling (Final or Contingent) – Freezing - Assuming or Maintaining Custody – Sequestering."[2]

The sanctions are of no moment unless and until a new right or encumbrance is created through a levy, attachment, seizure or lien *in rem*.  That the sanctions bite only when property rights are implicated is consistent with the limits of the power to enact them in the first place.  *See, e.g., Nat'l Oil Corp. v. Libyan Sun Oil Co.*, 733 F. Supp. 800, 809-812 (D. Del. 1990) ("[b]locking regulations bar only judicial acts that would effect a transfer of foreign property or property interests . . . the President's statutory authority is limited to regulating those judicial processes that would effect a transfer of foreign property or property interests.").

---

[2] U.S. Dep't of Treasury, OFAC, Other Sanctions Programs, Venezuela Sanctions, FAQ Nos. 808 (Dec., 9, 2019), available at https://home.treasury.gov/policy-issues/financial-sanctions/faqs/topic/1581.

## II. A Lien or Attachment Depends on Delivery or Service of the Writ; Accordingly, Sanctions Do Not Prevent Merely Issuing the Writ

Delaware law determines at what point any lien or attachment is created in the execution process that may implicate the OFAC sanctions regulations (and require a license to be effective). *See, e.g., LNC Invest., Inc. v. Democratic Repub. of Congo*, 69 F. Supp. 2d 607, 610-13 (D. Del. 1999) (describing execution procedures by Delaware *fi. fa.* writ as applicable in federal court).

In this situation, the soonest any sort of lien or attachment could arguably arise is when the *fi. fa.* writ is delivered to the U.S. Marshals for service. However, as explained below, it is more likely that OFAC regulations are first implicated by service of the *fi. fa.* writ. Either way, ConocoPhillips is merely requesting issuance of the writ.

When the debtor's property is not physically seized but is in the possession or control of another, "the appropriate form for attachment is a writ of attachment *fieri facias*." *LNC Invest., Inc.*, 69 F. Supp. 2d at 611-12 (citing *Wilmington Trust Co. v. Barron*, 470 A.2d 257, 262 (Del. 1983)); *see also Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 333 F. Supp. 3d 380, 387-88 (D. Del. 2018). Ordinarily, the creditor's attorney completes a form of the writ with a space for the signature of the Prothonotory (substituted by the Clerk of the Court in the federal system). The writ commands the sheriff (substituted by the U.S. Marshals Service in the federal system) to attach the property of the debtor in possession of the garnishee. After the Clerk signs the writ with the seal of the Court, the writ is issued. After it is issued, the writ is delivered to the U.S. Marshals to levy on the debtor's property in the hands of the garnishee. *See LNC Invest., Inc.*, 69 F. Supp. 2d at 610-13.

The priority of competing garnishment liens on attachments *fieri facias* is decided by reference to 10 *Del. C.* § 5081. *See, e.g.*, *PSC, Inc. v. Londergan*, 1985 WL 189266 (Del. Super. Ct. 1985) ("The issue here is the relative priorities of liens of judgment creditors."). Section 5081

(and the case law applying it) therefore determines the earliest moment when an enforceable lien on a debtor's personal property is created, and when it expires. That statute provides:

> "An execution shall not bind goods and chattels until it is delivered to the sheriff or other proper officer to be executed. An execution shall, from the time it is so delivered, bind all the goods and chattels of the defendant within the bailiwick, which shall be actually levied upon within 60 days thereafter. No levy upon goods and chattels, made by virtue of execution process, shall be of any force or effect as against a subsequent execution levied upon the same goods and chattels for a longer period than 3 years from the making of such first mentioned levy."

10 *Del. C.* § 5081.

Section 5081 in its current form dates from 1852. Originally, the common law rule was that a lien arose from the date the writ issued. *Short v. Landes*, 39 A.2d 17 (Del. Super. Ct. 1944) ("found to be productive of great injustice"); *see also Denny v. Wilmington Ice & Coal Co.*, 128 A. 123 (Del. Ch. 1925). Under the 1829 version, the lien arose from delivery of the writ to the sheriff and survived for the life of the writ (whether or not any levy was made). *See Short*, 39 A.2d 18, *Denny*, 128 A. at 124.

By amendment in 1852, a lien still arose from delivery of the writ to the sheriff but would be lost unless the sheriff levied the debtor's property within 60 days. *See Short*, 39 A.2d 18 ("An execution therefore has a limited lien for sixty days, but to keep such lien and priority it must be followed by an actual levy within sixty days of its delivery to the Sheriff."). If the levy was not made within the 60 days (or 30 days for an execution issued by a justice of the peace), then a lien or attachment could be soonest created only upon actual levy. *See, e.g.*, *In re J.R. Richardson Co.*, 83 A. 1034 (Del. Super. Ct. 1912) (no actual levy made on earlier-delivered writ, and so first creditor was entitled to no part of proceeds from separate levy and sale made pursuant to a later-delivered writ issued in favor of another creditor).

After Delaware enacted the Uniform Commercial Code ("UCC") in 1967, the lien before levy under section 5081 no longer applied in a range of circumstances. In *Flemming v. Thompson*, 343 A.2d 599 (Del. 1975), the Delaware Supreme Court refused to give effect to a lien in favor of a judgment creditor, even though the writ had been delivered to the sheriff before the sale of the property, because the levy was not made until after the property was sold by the debtor to a *bona fide* purchaser for value. *See Flemming*, 343 A.2d at 600 ("the relation-back provision" of section 5081, by which a lien could become "effective from the date of delivery of the writ to the Sheriff," is "an archaic anomaly in current commercial life."). *Flemming* confirmed that section 5081 was repealed to the extent inconsistent with the UCC. *See id.*

Even though the statute is unchanged, courts in most circumstances today regard the earliest creation of an enforceable lien or attachment *in rem* from the date a lien is perfected by levy by the sheriff (and not when the writ was delivered to the sheriff). *See, e.g.*, *In re Stanley's Asphalt Paving, Inc.*, 353 B.R. 63, 65 (Del. Bankr. 2006) ("The lien created [by section 5081] is effective only upon actual levy by the sheriff and remains valid for three years") (collecting cases).

In any event, whether any sort of lien may yet be created when a writ is placed in the hands of the U.S. Marshals or instead not until the Marshals levy on property, there can be no dispute that the mere *issuance* of a *fi. fa.* writ is incapable of affecting any interest in any property. *See, e.g.*, *PSC. Inc. v. Londergan*, 1985 WL 189266 (Del. Super. Ct. 1985) (first-in-time but undelivered garnishment created no lien as against two subsequent garnishments). As a result, ConocoPhillips is entitled to the *fi. fa.* writ, and the Court may order the Clerk to issue one, without any specific license from OFAC.

### III. ConocoPhillips' Judgment Should be Added to the Share Sale in *Crystallex*

In the *Crystallex* Decision, the Court confirmed "the time has come for [sales] procedures to be established and implemented to the greatest extent feasible under current circumstances" and decided "to set up the sales procedures and then to follow them to the maximum extent that can be accomplished without a specific license from OFAC." *See* D.I. 234 in Misc. No. 17-151-LPS, at 2, 32-33 ("[t]here is no just reason not to advance this litigation to the furthest point that OFAC's sanctions regime permits.") (quoting Crystallex from D.I. 223, at 2).

Likewise, ConocoPhillips is entitled to all the benefits of Delaware law and post-judgment devices that are not prohibited by sanctions regulations. For that reason, the Court should order the Clerk to issue the *fi. fa.* writ in favor of ConocoPhillips against the PDVH shares. For that same reason, and to give effect to the writ to the maximum extent possible in light of the sanctions, the Court should formally add ConocoPhillips' judgment to the sale process in *Crystallex*, so that the procedures established are designed to result in the sale of as many shares as necessary to satisfy both the Crystallex and ConocoPhillips judgments.

In the *Crystallex* Decision, the Court described a process designed to "result in the sale of as many, but only as many, shares of PDVH as are necessary to satisfy the judgment of Crystallex (and of any other judgment creditor whose judgment may be added to the sale)." *Id.* at 36. The Court further directed "the parties (including, if they wish, ConocoPhillips and the United States) [to] work with the special master to consider implementing procedures to permit any other judgment creditor of Venezuela to request to participate in the Court's process." *Id.*

But there is no just reason not to add ConocoPhillips' judgment to the process now. Just as establishing sales procedures in *Crystallex* does not violate OFAC sanctions, formally adding ConocoPhillips, particularly once it is a *fi. fa.* writ-holder (albeit not necessarily yet a perfected lien-holder), would give effect to Delaware law without offending the sanctions.

Recall that unlike Crystallex and the other creditors with awards rendered against Venezuela (and seeking to enforce them against the assets of PDVSA), ConocoPhillips in this action is a direct, mature judgment creditor of PDVSA. *See* D.I. 3. Therefore, but for the OFAC sanctions, ConocoPhillips would have had its *fi. fa.* writ and would have garnished PDVH as a ministerial matter. Whether other creditors of Venezuela, but without judgments against PDVSA, can or should participate, and the procedures for dealing with their requests to participate in the process, are issues separate and apart from ConocoPhillips' circumstances and this Motion.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in ConocoPhillips' prior briefing on the Motion (D.I. 3 & 13), ConocoPhillips respectfully requests the Court to enter an order: (a) authorizing the issuance of the *fi. fa.* writ, with subsequent delivery and service conditioned on OFAC authorization (or the lifting of sanctions); and (b) adding ConocoPhillips to the *Crystallex* sales process as writ-holder as against PDVSA's shares in PDVH.

ROSS ARONSTAM & MORITZ LLP

*/s/ Garrett B. Moritz*
Garrett B. Moritz (Bar No. 5646)
100 S. West Street, Suite 400
Wilmington, Delaware 19801
(302) 576-1600
gmoritz@ramllp.com

*Attorneys for Plaintiffs*

*Of Counsel*:

Michael S. Kim
Marcus J. Green
Josef M. Klazen
KOBRE & KIM LLP
800 Third Avenue
New York, New York 10022
(212) 488-1200
michael.kim@kobrekim.com
marcus.green@kobrekim.com
jef.klazen@kobrekim.com

Dated: February 16, 2021