# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PHILLIPS PETROLEUM COMPANY VENEZUELA LIMITED and CONOCOPHILLIPS PETROZUATA B.V., | :<br>:<br>:<br>: |
| *Plaintiffs,* | :<br>: |
| v. | : C.A. No. 19-mc-00342-LPS |
| PETRÓLEOS DE VENEZUELA, S.A., CORPOGUANIPA, S.A., and PDVSA PETRÓLEO, S.A., | :<br>:<br>:<br>: |
| *Defendants.* | :<br>: |

## DEFENDANTS' REPLY SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO CONOCOPHILLIPS'S ATTACHMENT MOTION

OF COUNSEL:

Joseph D. Pizzurro (pro hac vice)
Kevin A. Meehan (pro hac vice)
CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP
101 Park Avenue
New York, NY 10178
(212) 696-6000
jpizzurro@curtis.com
kmeehan@curtis.com

March 9, 2021

HEYMAN ENERIO
GATTUSO & HIRZEL LLP
Samuel T. Hirzel, II (#4415)
300 Delaware Avenue, Suite 200
Wilmington, DE 19801
(302) 472-7300
SHirzel@hegh.law

*Attorney for Defendants Petróleos de Venezuela, S.A., Corpoguanipa, S.A., and PDVSA Petróleo, S.A.*

**TABLE OF CONTENTS**

NATURE AND STAGE OF PROCEEDINGS ...................................................................................1

ARGUMENT ..................................................................................................................................2

    I.      ConocoPhillips Ignores the Text of the OFAC Regulations, which Expressly Prohibit the Issuance of a Writ of Attachment .........................................2

    II.     ConocoPhillips's Newly Asserted Request for Its Judgment to "Be Added to the Share Sale in Crystallex" Must Be Denied ......................................................6

CONCLUSION ................................................................................................................................8

# TABLE OF AUTHORITIES

**Pg.**

**Cases**

*Battou v. Sec'y United States Dep't of State*,
   811 F. Appx. 729 (3d Cir. 2020) .................................................................................................. 6

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
   No. 17-mc-151-LPS, 2021 U.S. Dist. LEXIS 7793 (D. Del. Jan. 14, 2021) ........................... 3, 5

Dean Witter Reynolds, Inc. v. Fernandez,
   741 F.2d 355 (11th Cir. 1984) ..................................................................................................... 4

*Nat'l Oil Corp. v. Libyan Sun Oil Co.*,
   733 F. Supp. 800 (D. Del. 1990) .................................................................................................. 4

*Republic of Panama v. Lexdale, Inc.*,
   804 F. Supp. 1521 (S.D. Fla. 1992) ......................................................................................... 4, 6

*Rivera Rodríguez & Co. v. Taylor*,
   133 D.P.R. 881 (1993) ................................................................................................................. 5

*Simon v. Southern R. Co.*,
   236 U.S. 115 (1915) .................................................................................................................... 6

**Statutes**

8 Del. Code § 112 ............................................................................................................................ 7

8 Del. Code § 324 ............................................................................................................................ 7

**Executive Orders & Regulations**

31 C.F.R. § 515.310 ........................................................................................................................ 4

31 C.F.R. § 591.202 ........................................................................................................................ 1

31 C.F.R. § 591.309 ..................................................................................................................... 6, 8

31 C.F.R. § 591.310 ................................................................................................................ passim

31 C.F.R. § 591.407 ............................................................................................................... 1, 5, 6, 8

**Other Authorities**

OFAC FAQ 808 ............................................................................................................................... 7

Pursuant to the Court's Memorandum Order, dated January 15, 2021 [D.I. 30], and the scheduling order [D.I. 31], entered on January 29, 2021, Defendants submit this reply supplemental memorandum of law in opposition to ConocoPhillips's Attachment Motion.[1]

## NATURE AND STAGE OF PROCEEDINGS

ConocoPhillips concedes that a specific license is required to enforce its judgment through an attachment of PDVSA's blocked property, such as the PDVH shares. It further admits that it does not have the specific license required to obtain such an attachment. Nevertheless, ConocoPhillips tries to muddy the waters by proposing a distinction between the levying of an attachment of the PDVH shares, which indisputably requires an OFAC license, and the issuance of a writ of attachment, which ConocoPhillips claims, without any support, does not require a license. That argument is foreclosed by the clear language of the OFAC regulations, which state that "the **issuance**, docketing, or filing of, **or levy of** or under, any … **attachment**" of blocked property, such as the PDVH shares, is prohibited absent a specific license from OFAC. 31 C.F.R. § 591.310 (emphasis added). Thus, the OFAC regulations prohibit both the "issuance" and the "levy" of a writ of attachment of the PDVH shares because ConocoPhillips lacks the requisite OFAC license. The OFAC regulations further state that any writ of attachment of blocked property issued in the absence of a license would be "null and void" and could "not be the basis for the assertion or recognition of any interest in or right, remedy, power, or privilege with respect to such property or property interest." 31 C.F.R. §§ 591.202(a), 591.202(e), 591.310, 591.407. Accordingly, the Attachment Motion must be denied.

In its supplemental brief, ConocoPhillips also requests for the first time an order directing

---

[1] Unless otherwise defined herein, capitalized terms shall have the meaning ascribed to them in PDVSA's opening supplemental brief in opposition to the Attachment Motion. [D.I. 33].

that the SDNY judgment "be added to the share sale in *Crystallex*" and that any execution sale in *Crystallex* include a sufficient number of PDVH shares to satisfy both Crystallex's judgment and the SDNY Judgment.  D.I. 35 at 7.  In other words, ConocoPhillips is effectively seeking to bypass the attachment process and proceed directly as a participant in an execution sale of the PDVH shares.  However, ConocoPhillips's novel proposal would also violate the OFAC sanctions.  Nor is it permissible as a matter of Delaware law.  Thus, ConocoPhillips's newly asserted request to have its judgment added to the execution sale in *Crystallex* must be denied.

## ARGUMENT

**I.      ConocoPhillips Ignores the Text of the OFAC Regulations, which Expressly Prohibit the Issuance of a Writ of Attachment**

ConocoPhillips concedes that an attachment of PDVSA's blocked property, such as the PDVH shares, would violate the OFAC sanctions regulations absent a specific license from OFAC.  D.I. 35 at 3.  It also admits that it does not have such a license.  D.I. 35 at 2; D.I. 24 at 17:9-21.  And OFAC has repeatedly informed ConocoPhillips that it is not authorized to take any steps to enforce its judgment against PDVSA's blocked property, such as the PDVH shares.  *See* D.I. 14-1, § II(a); D.I. 14-3, §§ II(a), II(c); D.I. 34-1, §§ II(a), II(c).  Nevertheless, ConocoPhillips asserts, without any support, that the "issuance" of a writ of attachment does not constitute a "transfer" requiring a license under the OFAC regulations.  *See* D.I. 35 at 6-7 (citing 31 C.F.R. § 591.407).  That argument is precluded by the plain language of the OFAC regulations.

The Venezuelan sanctions regulations expressly define a prohibited "transfer" to include "the **issuance**, docketing, or filing of, or levy of or under, any … **attachment**" of blocked property, such as the PDVH shares.  31 C.F.R. § 591.310 (emphasis added).  Thus, the plain language of Section 591.310 forecloses ConocoPhillips's argument because it explicitly defines

2

an impermissible transfer to include the "issuance" of a writ of attachment.

Tellingly, ConocoPhillips does not mention or cite to the definition of "transfer" set forth in Section 591.310. Instead, ConocoPhillips simply makes up its own definition of "transfer" – that is limited to the creation of an enforceable lien – and asserts that, "in most circumstances," an enforceable lien is created upon the levy of an attachment by the sheriff. D.I. 35 at 6. But the entire discussion is a red-herring. To be sure, the OFAC regulations define a "transfer" to include "the creation … of any lien." 31 C.F.R. § 591.310. But the definition of "transfer" under Section 591.310 is not limited to acts that give rise to a lien. In particular, Section 591.310 expressly states that an impermissible "transfer" includes "the **issuance**, docketing, or filing of, or **levy of** or under, any … **attachment**" in the absence of a license. 31 C.F.R. § 591.310 (emphasis added). Thus, while ConocoPhillips goes to great lengths to distinguish between the "issuance" of a writ of attachment and the "levy of" such an attachment, that is a distinction without difference because both are prohibited in the absence of a specific license from OFAC. *Id.* And ConocoPhillips admits that it has no such license.

ConocoPhillips also ignores this Court's recent observation in *Crystallex* that "the current sanctions regime does appear to block issuance of new writs of attachments on Venezuelan assets in the United States without an OFAC license." *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 17-mc-151-LPS, 2021 U.S. Dist. LEXIS 7793, at *23-24 (D. Del. Jan. 14, 2021). That observation is consistent with the plain language of Section 591.310. It is also consistent with the decisions of other courts that have construed nearly identical definitions of the term "transfer" in other OFAC sanctions programs. For example, the Eleventh Circuit in *Dean Witter Reynolds, Inc. v. Fernandez* construed the nearly identical definition of the term "transfer" under the Cuban sanctions regulations, which prohibited "the issuance, docketing,

3

filing, or the levy of or under any judgment, decree, attachment, execution, or other judicial or administrative process or order." 741 F.2d 355, 357 (11th Cir. 1984) (quoting 31 C.F.R. § 515.310). The Eleventh Circuit held that, while the plaintiff was not required to obtain a license to commence its lawsuit, the OFAC regulations required that the plaintiff obtain a license before seeking to enforce the judgment. It explained: "Entry of judgment triggered the application of the [OFAC] Regulations … and all subsequent proceedings to enforce the judgment must therefore be licensed." *See id.* at 362; *see also Republic of Panama v. Lexdale, Inc.*, 804 F. Supp. 1521, 1523 (S.D. Fla. 1992) (holding that, under nearly identical language in the Panama sanctions regulations, a creditor "may not try to enforce its judgment against the assets of Panama" until "a license is granted by OFAC").

The only case cited by ConocoPhillips that deals with OFAC regulations is *Nat'l Oil Corp. v. Libyan Sun Oil Co. ("Sun Oil")*, 733 F. Supp. 800 (D. Del. 1990), which held that the Libyan sanctions did not preclude the entry of judgment on the award on the grounds that the "blocking regulations bar only those judicial proceedings that effect a transfer of foreign property or property interests" and not the entry of a judgment of liability. *Id.* at 809. In reaching that conclusion, this Court adopted the Eleventh Circuit's distinction in *Dean Witter* between the entry of judgment and proceedings to enforce a judgment. *Id.* Thus, if anything, *Sun Oil* supports PDVSA's position that ConocoPhillips was required to obtain a specific license from OFAC before seeking an attachment of the PDVH shares because, as ConocoPhillips admits, the Attachment "Motion is a *post-judgment motion*; a proceeding to enforce a judgment against PDVSA." D.I. 13 at 6.

The fact that the OFAC regulations expressly define an impermissible "transfer" to include the "issuance" of a writ of attachment is alone dispositive and mandates denial of the

4

Attachment Motion. Nevertheless, it bears mention that the OFAC regulations extend beyond impermissible transfers, and expressly prohibit the enforcement of a judgment through any "judicial process purporting to transfer **or otherwise alter or affect property or interests in property** blocked pursuant [to the Venezuelan sanctions]" absent a specific license from OFAC. 31 C.F.R. § 591.407. ConocoPhillips cites this language to argue that the OFAC regulations are only triggered when "property rights are implicated" and contends that property rights are implicated only upon the creation of a lien. D.I. 35 at 3. According to ConocoPhillips, the issuance of a writ of attachment is not prohibited because it does not give rise to a perfected lien and, as such, it does not alter or affect property rights.[2] D.I. at 4-5. However, as explained above, the OFAC sanctions are not limited to the creation of liens. Indeed, the OFAC regulations broadly prohibit any conceivable steps toward enforcing a judgment against blocked property, such as the PDVH shares, without a specific license. *See* 31 C.F.R. §§ 591.310, 591.407.

Furthermore, ConocoPhillips offers no support for its assertion that the issuance of a writ of attachment would not "alter or affect … interests in property" under Section 591.407. Its assertion conflicts with this Court's statement in *Crystallex* that "[u]nder Delaware law, the issuance of a writ of attachment is a 'purely legal remedy' that represents a legal property interest." *Crystallex*, 2021 U.S. Dist. LEXIS 7793, at *13; *see also Rivera Rodríguez & Co. v. Taylor*, 133 D.P.R. 881 (1993) ("issuance of a writ of attachment of property significantly affects the holder's property interest"). ConocoPhillips's assertion is also inconsistent with its prior representations that this issuance of the writ would give it priority over other creditors. *See* D.I.

---

[2] ConocoPhillips is unable to pinpoint when a lien arises. It admits that, at common law, a lien arose upon the issuance of a writ of attachment and that, under the Delaware attachment statute, a lien may arise upon delivery of the writ to the sheriff. D.I. 35 at 5.

5

13 at 9 ("The Court should decide this Motion now because … it would allow for an orderly and predictable means under Delaware law to establish indicative priority among creditors, pending resolution of the sanctions issues to allow for an eventual execution sale."); D.I. 24 at 44:2-15 ("[I]ssuing the writ … means something.  We wouldn't be here asking for it if it didn't have value. … It's a way that the Court could potentially administer indicative if not formal priority going forward.").  Thus, ConocoPhillips has taken the position that the issuance of a writ of attachment would give it a contingent priority interest in the PDVH shares.  And the OFAC regulations prohibit issuance of any judicial order that would create, transfer or affect any "future" or "contingent" interest in blocked property, such as the PDVH shares.  31 C.F.R. §§ 591.309, 591.310, 591.407.

Finally, in light of the admittedly contingent nature of the relief sought by ConocoPhillips, the Attachment Motion is not ripe for adjudication.  *See Battou v. Sec'y United States Dep't of State*, 811 F. Appx. 729, 730-31 (3d Cir. 2020).  ConocoPhillips admits that, unless and until OFAC issues the requisite license, an attachment cannot be levied on the PDVH shares, and a writ of attachment cannot be issued to the sheriff or served on PDVH.  D.I. 35 at 5.  Thus, because the Attachment Motion seeks relief that is necessarily contingent upon future conduct by third parties – namely, the issuance of a license by OFAC or the lifting of the sanctions by the President – any order granting that Motion would be an advisory opinion and a nullity.  *See Simon v. Southern R. Co.*, 236 U.S. 115, 132 (1915); *Lexdale,* 804 F. Supp. at 1524.

## II. ConocoPhillips's Newly Asserted Request for Its Judgment to "Be Added to the Share Sale in *Crystallex*" Must Be Denied

For the first time in its supplemental brief, ConocoPhillips asks this Court to "formally add [its] judgment to the sale process in *Crystallex*, so that the procedures established are designed to result in the sale of as many shares as necessary to satisfy both the Crystallex and

ConocoPhillips judgments." D.I. 35 at 7. In other words, having admitted that it is prohibited from obtaining an attachment of the PDVH shares under the OFAC sanctions, ConocoPhillips is effectively seeking to evade the attachment requirement altogether and proceed directly to execution of its judgment against the PDVH shares. ConocoPhillips's unprecedented request is not permitted under either Delaware law or the OFAC regulations.

ConocoPhillips does not cite a single authority in support of its novel request to skip the attachment process and proceed directly to an execution sale of the PDVH shares. The attachment and execution of shares of a Delaware corporation is governed by 8 Del. Code § 324. That provision does not provide for a creditor to proceed directly to an execution sale. Rather, it requires an attachment of the shares as a condition precedent to an execution sale of such shares. *See id.*; *see also* 8 Del. Code § 112. ConocoPhillips has conceded as much, arguing that it would need to obtain a lien on the PDVH shares before it could enforce that lien through an execution sale. *See* D.I. 13 at 7. But ConocoPhillips admits that it cannot obtain a lien on the PDVH shares under the OFAC regulations. *See* D.I. 13 at 8-9; D.I. 24 at 13-16; D.I. 35 at 3. Thus, ConocoPhillips cannot proceed to execution until it obtains a lien on the PDVH shares, and it cannot obtain such a lien unless and until it receives a specific authorization from OFAC.

In addition, the OFAC sanctions prohibit ConocoPhillips from proceeding directly to an execution sale of the PDVH shares. ConocoPhillips has repeatedly acknowledged that it cannot execute upon the PDVH shares or "otherwise take concrete steps in furtherance of an auction or sale" of the PDVH shares without a license, and it admittedly has no such license. D.I. 13 at 7 (quoting OFAC FAQ 808); *see also* D.I. 3 at 3; D.I. 24 at 17:11-21. Moreover, the order requested by ConocoPhillips to "add" the SDNY Judgment to the sales process in *Crystallex* is effectively an attachment in all but name, and ConocoPhillips does not possess the requisite

7

license to attach the PDVH shares. An order adding the SDNY Judgment to the sales process in *Crystallex* and providing for a sale of a sufficient number of the PDVH shares to satisfy the SDNY Judgment would provide ConocoPhillips with a contingent interest in such shares. But, as explained above, the OFAC sanctions prohibit a judgment creditor from obtaining a contingent interest in PDVSA's blocked property, such as the PDVH shares, without a specific license from OFAC. *See* 31 C.F.R. §§ 591.309, 591.310, 591.407.

## CONCLUSION

For the foregoing reasons, this Court should deny the Attachment Motion, as well as ConocoPhillips's new request for an order adding the SDNY Judgment to the sales process in *Crystallex*.

HEYMAN ENERIO
GATTUSO & HIRZEL LLP

*/s/ Samuel T. Hirzel*
Samuel T. Hirzel, II (#4415)
300 Delaware Avenue, Suite 200
Wilmington, DE 19801
(302) 472-7300
shirzel@hegh.law

OF COUNSEL:

Joseph D. Pizzurro (pro hac vice)
Kevin A. Meehan (pro hac vice)
CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP
101 Park Avenue
New York, NY 10178
(212) 696-6000
jpizzurro@curtis.com
kmeehan@curtis.com

*Attorney for Defendants Petróleos de Venezuela, S.A., Corpoguanipa, S.A., and PDVSA Petróleo, S.A.*

Dated: March 9, 2021